MORGAN B. HINKLE, IN HIS OWN RIGHT, AND AS ADMINISTRATOR
DE BONIS NON OF JOHN FISHER, DECEASED, COMPLAINANT AND
APPELLANT, v. MOSES WANZER, JAMES F. JOHNSON, AND
JOHN S. HUNTER.

Where a complainant in chancery averred that a note of which he was one of the
makers, had been deposited by the holder, amongst other collateral securities, with
a person who had become responsible for the debts of the holder; and averred
further that enough had been collected from these collateral securities to meet and
defray all the responsibilities incurred, the evidence showed that this was not the
fact. The amount collected was not enough, by a large deficiency, to reimburse
the losses incurred as indorser and surety.

The evidence is not sufficient to show that the note had been paid by another of the
makers than the complainant; or that a release had been executed to him by the
holder of the note. The answer is substantially responsive to the charge, and
denies it. Other circumstances disclosed in the evidence, sustain the answer.

The collateral securities, being deposited with counsel for the purpose of paying the
debts of the insolvent as they were collected, were properly held by the counsel as
a trust fund, and it was correct to allow the surety to control the judgment upon
the note in question.

The cases examined with respect to the assignment of equitable interests and *choses
in action.*

THIS was an appeal from the circuit court of the United
States for the southern district of Alabama.

The case is fully stated in the opinion of the court.

It was argued by *Mr. Phillips,* for the appellant, and by *Mr.
Reverdy Johnson* and *Mr. Reverdy Johnson, Junior,* for the
appellees. There was also a brief filed by *Mr. Hopkins* for the
appellant, and *Mr. Chandler,* for Hunter.

The points which were made by the respective counsel can
better be understood by giving them in connection with their
own statements of the facts; and as these were short, they are
inserted.

*Mr. Phillips,* for the appellant, stated the case thus:—

The complainant seeks to enjoin the defendant Hunter from
issuing and levying an execution on a certain judgment recov-
ered in the said circuit court, on the 10th April, 1839, by Moses
Wanzer, founded upon a note signed by Thomas Long, George
D. Fisher, and the complainant, Hinkle, who was a surety
thereon.

The note, being the property of one John Fisher, was trans-
ferred by him, with very many others, to Gordon, Campbell, and
Chandler, on the 13th May, 1837, for purposes thus stated in
the receipt: " The proceeds of all notes, as they may be col-
lected, are to be appropriated by us in the payment of any
demands which we may hold against said Fisher and Johnson,
upon their own debts, and not upon indorsements or liabilities
for others."

30 *

Mozes Wanzer, the defendant to this bill, being one of the creditors thus provided for, the attorneys aforesaid transferred to him the note above described, upon which the judgment was recovered.

It is admitted by the record, that after the recovery of the judgment, Wanzer was fully satisfied of his debt out of other assets, and that he no longer claims to have any interest in or control over said judgment; and that said Hunter, without any assignment or other transfer from said Wanzer, has issued an execution thereon, and threatens to levy the same on the property of the complainant, by the authority alone of the said attorneys.

These proceedings are justified by the defendant, Hunter, on the ground that they were had under the instructions of Fisher. "At this time, says defendant, Fisher gave verbal as well as written instructions to the said firm, to protect this defendant from the payment of the debts aforesaid, from the papers mentioned in that receipt." And again: "The particular claim of this defendant on this note was derived from a letter written by Fisher, in Mobile, to the firm, at the instance of this defendant, to hold the balances in their hands after the payment of the debts particularly provided for, for the indemnity of this defendant." Upon the same head, the deposition of the attorney states: "Fisher gave verbal and written directions to deponent to protect Mr. Hunter any remainder there might be after the payment of the claims in the hands of deponent's law firm."

There is no evidence to sustain the averment that the instructions given by Fisher to the attorneys, were at the instance of the defendant, Hunter, or by virtue of any agreement with him, or that the attorneys ever notified said Hunter of the instructions during the life of said Fisher, or that the said Hunter had become the creditor of said Fisher during his lifetime. Fisher died on the 9th February, 1838, and the complainant, Hinkle, was appointed administrator *de bonis non* of his estate, on 3d December, 1849.

Upon this statement the appellant will contend, that there was no assignment or appropriation of the note in question by Fisher to Hunter, nor any intention to make one. But on the contrary, the attorneys were at all times bound to hold the surplus funds that might accumulate in their hands at the free disposal of said Fisher, as well after the said "verbal or written instructions" as before. Tiernan *v.* Jackson, 5 Pet. 595; Rogers *v.* Lindsey, 13 How. 441; Williams *v.* Everett, 14 East, 582; Grant *v.* Austin, 3 Price, 58; Hoyt *v.* Story, 3 Barb. S. C. 265; Cowperthwaite *v.* Sheffield, 3 Comstock, 243; Rogers *v.* Hosack's Exrs. 18 Wend. 319; Watson *v.* Duke of

Wellington, 4 Cond. Eng. Chan. 573; 72 Law Library, 231; Scott v. Porcher, 3 Men. 662; Walwyn v. Coutts, Ib.

These instructions conferred a power upon the attorneys of a revocable character; but even if the power were irrevocable during life, it became extinct by the death of Fisher.

In those cases where the power is coupled with an interest, the rule is otherwise; but there it must be an interest in the thing itself. Hunt v. Rousmanier, 8 Wheat. 204; Houghtaling v. Marvin, 7 Barb. S. C. 412; Eastm. v. Morton, Ohio, June term, 1854, Amer. Law Reg., August, 1854.

The case, however, as the appellant contends, does not involve these considerations, because it appears that Long, one of the makers of the note, has paid the same to said Hunter.

The bill, which is sworn to, avers that the complainant, who was well acquainted with Hunter's handwriting, had seen the receipt or statement which Hunter had given to Long, in satisfaction of said judgment, and in 13th interrogatory, Hunter is specially required to answer whether he did not "give or sign any receipt or statement showing the payment," &c.

Hunter omits to give a separate answer to this interrogatory, but in answer to the 8th, 9th, 10th, 11th, and 12th interrogatories he says: "This defendant has not released Long, nor received any settlement, payment, or satisfaction from him."

This answer, as the appellant contends, is not of that character which requires two witnesses, or one witness and corroborative facts, to disprove it. It does not contain a "clear and positive denial" of the charge in the bill. An answer deserves more or less credit, as it fairly meets all the inquiries contained in the bill. A general denial is not sufficient, but there must be an answer to sifting inquiries upon the general question. Welfo d, 366, 367, 369; Freeman v. Fairlie, 3 Mer. 41; Welford, 309, 310; 2 Eq. Ca. Abr. 67; Paxton's case, Sel. Ca. in ch. 53; 6 Vesey, 792; 1 Sims and Stu. 235; Hepburn v. Durand, 1 Br. Chan. ch. 436; Prout v. Underwood, 2 Cox Chan. 135; Daniel v. Mitchell, 1 Story, 188; Bk. Georgtown v. Geary, 5 Pet. 110; 9 Cranch, 160; 2 Daniel's Chan. 984; Hughes v. Garner, 2 Young and Call, 333; Parkman v. Welsh, 19 Pick. 234; Greeley Eq. 4.

The record, therefore, contains upon the subject of payment the precise statement of the bill sworn to; and the positive evidence of Mrs. Long, (p. 41,) opposed by the loose, indefinite, and evasive response of the answer. The oath of the complainant is a full offset to that of defendant. Garron v. Carpenter, 1 Port. 374; Searcy v. Pannell, 1 Cook's Rep. 110; 1 McLeod; Lendell and Gamon, 10 Humph. 164; Union Bank of Georgtown v. Geary, 5 Pet. 99.

The counsel for the appellees presented the following statement.

The bill in this case seeks to restrain the collection of an execution in favor of Wanzer, (but controlled by and belonging to Hunter,) against Long and the complainant, Hinkle. The judgment upon which its execution issued was upon a note for $1,520, held by the firm of Fisher and Johnson, made by Thomas Long, George D. Fisher, and Hinkle, the complainant, and on 17th April, 1837, placed by Fisher and Johnson, together with other notes, in the hands of attorneys for collection and to cover certain liabilities of Fisher and Johnson, as appears by the receipt of the attorneys. The proceedings in which the judgment was rendered were in the circuit court of the United States for the ninth circuit. The bill alleges, in the first place, that the judgment does not belong to Hunter, and he has no right to control it; in the second place, that Fisher, who owned the note on which the judgment was obtained, abundantly indemnified Hunter, his security; and that Hunter, out of the property transferred to him by Fisher, has been fully satisfied, and consequently, has no right to enforce this judgment; in the third place, if the judgment belongs to Hunter and he has not been fully indemnified out of Fisher's assets, yet he has collected this judgment out of Long, and has no right to enforce the execution against Hinkle, the complainant. It prays that the judgment be declared satisfied, or that complainant, as administrator of Fisher, be declared entitled to the judgment, and that Wanzer and Hunter be enjoined proceeding upon it, &c.

The answer of Hunter admits that Wanzer has now no interest in the judgment, and explains why suit was brought in his name. Fisher was indebted to Wanzer and others; Wanzer placed his claim in the hands of Gordon, Campbell, and Chandler, attorneys, for collection; Fisher's other creditors also placed notes in their hands. To settle these suits, Fisher placed with the attorneys a number of notes for collection, and among them was the note of Long, indorsed by Hinkle, the complainant. This note was sued in the name of Wanzer, with the intention to secure his claim. Wanzer's debt was paid out of other notes of Fisher.

The answer then states, that Hunter was the indorser of Fisher for a large amount, and he became so to enable Fisher to settle the debts for which he was sued by Gordon, Campbell, and Chandler. The arrangement made by Fisher with these attorneys is set out in the answer. The substance of it is, that Fisher was to give his notes, indorsed by Hunter, in payment of the notes of Fisher, who had been sued by Gordon and Co. These notes, indorsed by Hunter, were given, to the amount of

nearly $18,000. Fisher gave instructions to the attorneys to save Hunter from the payment of these debts, by the paper mentioned in the receipt. In addition to these liabilities, Hunter states that he indorsed a note of Fisher, for $10,000, dated March 1, 1837, at sixty days, which was protested and paid by Hunter, partly out of Fisher's property, and partly out of his own; and refers to a deed from Fisher to him, securing him against liability on this note. He further states, that he paid Nelson, Carleton, and Co. $3,472, on a bill of exchange drawn by Fisher, 8th March, 1837. Thus, upwards of $30,000 were paid by Hunter, on account of Fisher; and the extent of credits which the answer gives to Fisher's estate is but $16,558.28.

Hunter denies that the judgment in question was ever settled by Long, or that he ever released him.

The evidence of Campbell explains the whole transaction by which Hunter became security for Fisher.

Barney proves that Hunter, by 23d April, 1843, had paid on the four notes given under the agreement, which came into the hands of the United States Bank, $11,627.65, which included interest. On these notes, $4,336 had been paid in 1838, which about corresponds with the sums the answer states to have been collected from Fisher's estate, and paid on account of these four notes.

Campbell, also, proves that $4,818.27 were paid on account of a judgment by the Bank of Columbus against Hunter, on the note for $10,000, referred to in the answer and the deed. This amount corresponds with the first item in the credits given Fisher's estate; and for the balance of the note Hunter was liable, and (he says) paid.

Sayre proves that Hunter paid him on notes given under the agreement, and on a draft of Fisher, indorsed by Hunter, $3,271.52.

Gilchrist proves that Hunter paid $3,442 on the bill in favor of Nelson, Carleton, and Co.

Making an aggregate paid out by Hunter, on account of the several responsibilities, of $32,677.17.

And the complainant's effort is to overcome the statement of credits contained in the answer, by showing that Hunter received from Fisher's estate full indemnity for all liabilities. In this he fails; for his whole evidence does not make even as much of Fisher's property come into Hunter's possession as the answer gives credit for. The depositions of Cook, Gilchrist, Bolling, Sadler, and Fisher, do not prove that Hunter ever collected, out of the property or assets of Fisher, $10,000.

The complainant relies on the deposition of Mrs. Long, and what he deems the corroborating evidence of Bolling, to show that the judgment has been satisfied by Long.

The bill was dismissed in the circuit court.

The appellees will contend : —

1. That, if the state of accounts between Hunter and Fisher's estate be as shown in the answer, Hunter is, under the circumstances, entitled to the proceeds of the judgment. 2 Story's Eq. §§ 1044–1047; 5 Wheat. 277; 5 Pet. 600; 1 Ves. Jr. 281; 5 Paige, 632; 1 Johns. C. 205; 4 Cond. Eng. Ch. R. 690; 4 Myl. and Cra. 702; 1 Story's Com. Eq. § 499.

2. That the account stated in the answer is as correct as it purports to be, and is unaffected by any evidence in the cause.

3. That the answer being responsive and sworn to, as to facts in the personal knowledge of the defendant, and denying Long's satisfaction of the judgment, it can only be overcome by two credible witnesses, or one and strong corroborating circumstances, neither of which requisites exists in the present case; and the whole equity of the bill being sworn away, it was properly dismissed. 6 Wheat. 453; 5 Pet. 99; 9 Cranch, 153; 6 Ib. 51.

Mr. Justice DANIEL delivered the opinion of the court.

The appellant, by his bill in the circuit court, alleged : That, on the 17th day of April, 1837, John Fisher and James F. Johnson, of the mercantile firm of ·Fisher and Johnson, were the holders and owners of a promissory note, made by Thomas Long, George D. Fisher, and the appellant, Hinkle, bearing date on the 19th of December, 1836, for the sum of $1,520, payable twelve months from the date of said note, to William Ryan, surviving partner of the firm of Porter and Ryan, and which had been transferred, by indorsement, from Ryan to Fisher and Johnson; that this note was, by Fisher and Johnson, on the 17th of April, 1837, together with various other notes, placed in the hands of Messrs. Gordon, Campbell, and Chandler, attorneys, for collection, as appears by the receipt of these persons, filed as an exhibit with the bill, and marked A.

That, about the 17th of April, 1837, James F. Johnson, for valuable consideration, sold and assigned all his interest in the note above mentioned, and in the firm of Fisher and Johnson, to his partner, John Fisher.

That John Fisher having departed this life in 1838, administration of his estate was duly committed to his widow, and to his brother, William P. Fisher, who, having afterwards surrendered their rights and powers, as representatives of the estate of John Fisher, administration *de bonis non* of that estate was, on the 3d of December, 1839, duly committed to the complainant, who makes profert of the letters of administration granted to him.

That Messrs. Gordon, Campbell, and Chandler, the attorneys with whom the note had been deposited, instituted a suit thereon, in the name of Moses Wanzer, as plaintiff, against the makers of that note, in the circuit court of the United States for the southern district of Alabama, and, on the 11th day of April, 1839, recovered a judgment against Thomas Long and the appellant, in the name of Wanzer, for the sum of $1,691, in damages and costs of suit.

That, after the rendition of the said judgment, the appellant was informed by Wanzer that Fisher and Johnson, or Fisher, had owed him a small sum of money, which had been fully paid off, and that he did not know why suits had been brought in his name on the said note, and on other notes mentioned in the receipt of the said attorneys ; and, at the same time, further stated that he had no right, and did not pretend to have any right or interest whatsoever, in the judgment recovered in his name.

That Hunter claims a right to this judgment, upon what precise authority the appellant does not know, as he has never heard, and does not believe, that it has been ever transferred or assigned to him by Wanzer ; but, on the contrary, believes and alleges that any such transfer or assignment by Wanzer has never been made.

That Hunter, as the appellant has been informed and believes, was bound as surety or indorser for Fisher and Johnson, or Fisher ; but in what manner, or for what amount, if so bound, the appellant is not informed ; that he does not know whether the said Hunter has paid out of his own funds any money as surety or indorser, either for Fisher or Fisher and Johnson, but, to the best of his knowledge and belief, Hunter has not paid from his own funds any money, as surety or indorser for either, or, if he has, such payment has been fully reimbursed to him.

That, for a large portion, if not for the whole liability of said Hunter for Fisher, or Fisher and Johnson, he was secured and indemnified by a mortgage or deed of trust on real estate and slaves, which have been sold under said mortgage or deed of trust ; in addition to which, there came to the hands of the said Hunter, and were collected by him, promissory notes, accounts, credits, property, and effects of Fisher and Johnson, and of the said Fisher, both before and since his death, of great value, and were appropriated by Hunter to his indemnity, as surety and indorser as aforesaid, and to an amount greatly exceeding any liability he may have incurred, as surety or indorser as aforesaid, leaving the said Hunter largely indebted to the estate of said John Fisher.

That Thomas Long, one of the defendants, against whom, conjointly with the appellant, the judgment aforesaid was recovered, and who died some time in the year 1843, did, in the year 1841, inform the appellant that John S. Hunter having claimed of Long the amount of said judgment, it was fully paid off and discharged by Long, who showed to the appellant a statement or receipt for the amount of the judgment, in the handwriting of Hunter, with whose writing the appellant is well acquainted.

That Hunter, under the pretext of an indemnity for his liabilities for Fisher, has been permitted by the attorneys, by whom the judgment in the name of Wanzer was obtained, to assume entire control over said judgment; and, in pursuance of said permission, did, on the 2d of May, 1839, sue out a writ of *fieri facias,* and, on the 10th of January, 1840, an *alias fieri facias* upon that judgment, on each of which writs a return of *nulla bona* was duly made.

That, from the date of the return upon the *alias fieri facias,* no proceeding was had upon said judgment until the 17th of September, 1849, when a *pluries fieri facias* thereupon was sued out, as the appellant charges, by the direction of John S. Hunter, and has been levied upon the property of the appellant; and, since then, a summons has been served, in virtue of the said judgment, upon John N. Smith, as a garnishee, upon the alleged ground that said Smith is a debtor to the appellant, or has property of the appellant in his possession.

That Hunter is wrongfully and oppressively, by means of the last-mentioned execution, and of the summons of the garnishee, Smith, harassing the appellant, by an effort to coerce from him the amount of the said judgment, when, in truth, nothing is due thereon, either to Wanzer or Hunter.

Upon the allegations above set forth, the prayers of the appellant are for a decree: 1. That the judgment against the appellant and Long may be decreed to have been satisfied; or, 2. That the appellant, as administrator *de bonis non* of John Fisher, deceased, may be declared entitled to the said judgment, and the control of the same, if any thing shall be found due thereon. 3. That the said John S. Hunter and Moses Wanzer may be restrained from proceeding against the appellant, on the said judgment, and may be ordered to account for and pay to the appellant any money they may have collected upon the said judgment. 4. That if the said Hunter shall claim the judgment as an indemnity for any liability of himself, as surety or indorser of Fisher and Johnson, or of John Fisher, he may be ordered and required to show on what debt or debts he was bound, as indorser or surety, and what portion of such debt or

debts he has paid out of his own individual funds, and that he may be ordered to discover and account for all the property, real and personal, moneys, credits, &c., of the said Fisher and Johnson, or of the said Fisher, ever claimed, used, or received by him, for the purpose of his indemnity, as surety or indorser of Fisher and Johnson, or of Fisher individually.

The appellant, with the view of sustaining his case, and of eliciting from the appellee any disclosure which might tend to such a result, has, in his bill, propounded a number of interrogatories.

In our examination of this cause, we have deemed it necessary to consider such only of the interrogatories so propounded, as connected with and 'rising out of the allegations of the bill, do, by a comparison with the statements in the answer, present the true points or questions involved in this controversy.

Those questions relate : 1. To the extent of liability of the respondent, Hunter, as surety or indorser for John Fisher, and to the sufficiency or excess of the means of indemnity alleged to have been actually received by him, for losses incurred under that liability.

2. To the alleged payment by Long to Hunter, in discharge of the judgment recovered in the name of Wanzer.

3. To the fact of a transfer, either legal or equitable, of the judgment just mentioned, and to the right or authority of the attorneys, or of their principal, Fisher, to make a transfer or appropriation of that judgment.

Of the several defendants to the bill of the appellant, John S. Hunter alone answered that bill.

By the answer of Hunter is set out the assumption by him, as indorser upon bills and drafts drawn by Fisher and Johnson, under an arrangement between this firm and Messrs. Gordon, Campbell, and Chandler, representing as counsel and attorneys the creditors of Fisher and Johnson, of debts to the amount of $28,227.25.

The facts of this undertaking, and of its subsequent fulfilment by Hunter, chiefly by his individual resources, are abundantly established by the exhibition of the agreement itself; by the testimony of Messrs. Campbell and Chandler, with whom, for the benefit of the creditors, the agreement was made, and through whose hands the indorsed bills passed ; by the evidence of Stodder and of Jayne, to each of whom a portion of those bills was transferred, in satisfaction of debts due to them from Fisher; and also by the evidence of Barney, to whom, as the agent of the United States Bank, a much larger portion of those bills was delivered.

In addition to the liabilities set forth as above, it is proved

by the testimony of John A. Campbell, Esq., that Hunter, on the 16th of April, 1838, by his attorneys, Gordon, Campbell, and Chandler, paid to the Bank of Columbus, upon a judgment obtained by that bank against him, the sum of $4,818.27, which sum, the witness was informed by Fisher, was a debt incurred by Hunter for Fisher.

The answer contains a statement purporting to be a full exhibit of the money raised by sales of the property pledged by Fisher for the indemnity of his sureties and indorsers, as well as of all other sums derived from Fisher or from his debtors, and which have been applied for Hunter's reimbursement. This statement in the answer, including the judgment against Hinkle and Long, amounts to $16,558.28. To this statement, however, must be added the sum of $2,200, proved by the witness, Sadler, to have been paid to Hunter, upon the compromise of a debt due from Sadler and Barnes, and also a sum of $175, shown to have been received from a witness, Gilchrist; which sums, though derived from Fisher, are not comprised in statement in the answer. There is also exhibited in proof, in this case, a list of claims, by notes and open accounts, making an aggregate of $2,115.83, assigned by the executor of Fisher to Hunter and Cook, attorneys; which claims, it is stated in the assignment, were intended to meet the liabilities of Hunter for said John Fisher; but of these claims, many of which were not above $3, and resting upon open accounts, it is not in proof that any portion of them was certainly applied to Hunter's indemnity, or, indeed, was ever collected. But conceding the fact that the sums spoken of by Sadler and Gilchrist, and the entire list of claims assigned as above mentioned, were realized by Hunter, they would, when added to the sum of $16,558.28, admitted in the answer, compose   aggregate falling far short of the liabilities which Hunter, as the indorser and surety for John Fisher, and Fisher and Johnson, under the agreement with Gordon, Campbell, and Chandler, has actually incurred, and is proved to have satisfied. Upon a correct view, therefore, of the proofs in this cause, we are led to the conclusion, in opposition to 'the allegations in the bill, and in accordance with the answer and the proofs, that Fisher and Johnson, and John Fisher, who, at the time of his death, was utterly insolvent, had failed, by a large deficiency, to reimburse to Hunter the losses incurred by the latter as indorser and surety for the former.

The second question which we have mentioned as arising in this cause, namely, that of satisfaction by Long of the judgment against Long, Hinkle, and Fisher, has not been entirely free from embarrassment when tested by the rules

which govern proceedings in courts of equity. Correctly viewed, however, we deem that embarrassment rather apparent than real, and such as yields necessarily under a correct interpretation of the pleadings and evidence in this cause. It has been contended, that the interrogatory propounded by the bill, as to the payment by Long to Hunter of the judgment in the name of Wanzer, and the execution by Hunter of a receipt in full discharge of that judgment, is not directly answered; that the answer as to this interrogatory is evasive, and therefore is deprived of that weight which, if directly responsive, it would require the testimony of two witnesses, or that of one witness with strong corroborating circumstances, to overthrow. - Hence it is insisted, that the testimony of the single witness, Mrs. Long, swearing positively to the written discharge or receipt of the amount of the judgment, must be taken as conclusive upon the subject of payment.

The rule of proceeding in equity here appealed to, is too well established and too familiar to require the citation of authorities for its support, or even to admit of its being questioned. The proper inquiry upon the point under consideration is, to ascertain how far the requirements of that rule have been complied with.

The charge in the bill in terms is as follows: " That your orator, sometime in the year 1841, was informed by Thomas Long, that he had fully paid off and satisfied to the said Hunter the amount of the said judgment; and the said Long then produced and showed to your orator a receipt or statement, in writing, signed by said John S. Hunter, whose handwriting was well known to your orator, showing that the said judgment had been so paid and satisfied by said Long."

Upon the basis of this charge is constructed and propounded the 13th interrogatory, in these words: " Did or did not the said Thomas Long, at any time or in any manner, pay, satisfy, settle, or secure to the said John S. Hunter the amount of the said judgment or any part thereof? Did or did not the said Hunter give or sign any receipt or statement, showing the payment, settlement, satisfaction, or securing the said judgment or any part thereof? "

Divesting this interrogatory of unnecessary verboseness and tautology, it may be remarked, that the substance or meaning of the charge in the bill, and the object of the interrogatory framed upon that charge, are made up of the alleged facts of payment by Long to Hunter, and of a written acknowledgment of such payment by the latter. The terms pay, satisfy, settle, or secure, are equipollent words, when used to express the fulfilment by Long of his liability upon the judgment, and in

a similar sense must be understood the terms receipt and statement, when used to describe a written acknowledgment of payment by a party making or signing such acknowledgment. And here it may be remarked, that whatever may be the technical meaning and effect of the word release at law, it can hardly be doubted that a receipt or written acknowledgment of payment or settlement would be construed as a release in a court which looks rather to the substance of things than to their forms; and whose maxim is, *ut res magis valeat quam pereat.* The reply to the 13th interrogatory is, that the respondent had not received from Long any settlement, payment, or satisfaction. So far, the reply to the interrogatory falls within the literal terms of that inquiry. But it proceeds to state further, that the respondent has never released Long from his liability to satisfy the judgment, and this form of denial, it is insisted, does not exclude the execution of a written receipt such as has been alleged in the bill, and mentioned by the witness, Mary Long. We have already said that, in equity at least, a receipt for the payment of debt would be regarded as a release from further demand by the creditor; and we think that, according to the generally received acceptation of language, a creditor who, in speaking of his debtor, denies having received of him either settlement, payment, or satisfaction, and in the same statement avers that he has never released that debtor, must be understood as intending to declare that he had given him no written acknowledgment of payment, nor acquittance of any description whatsoever. The exception now urged to the answer to the 13th interrogatory, even upon the face of that response, appears to partake more of the character of a verbal criticism than of that of a fair and substantial impeachment. And we are the less inclined to extend the scope of this exception, since the complainant below, by a more timely and regular proceeding, might have obtained what he now contends for, without hazard of injury or surprise to the respondent.

We regard the answer as substantially responsive, and entitled to every legal effect incident to it as such.

With respect to the circumstances connected with this charge of payment in the bill, we think that so far as they have been disclosed, their preponderance is decidedly to the statement in the answer.

The bill admits the insolvency of Long at the period of his death. At what precise time he became insolvent is not stated. It is not probable that he became insolvent just at that period; and the widow of Long, whose testimony is relied on to establish the payment and the existence of the receipt in 1841, assigns as a reason for her knowledge of these transactions, her familiarity with her husband's embarrassments at that date.

Alfred Harrison, in December, 1851, swears, that from the 4th of March, 1839, to the 4th of March, 1842, he was sheriff of Lowndes county, in which Long lived and died, and was also sheriff of that county at the time of his testifying.   That as sheriff, he has had in his hands various executions against Long, and although some of them were for very small sums, he was never able to collect any one of them, and had returned on them, " No property."

B. Harrison, another witness, states, that from March, 1839, to March, 1842, he acted as deputy sheriff of the county of Lowndes, and from March, 1842, to March, 1845, was sheriff of that county; that, as sheriff and deputy sheriff, he had opportunities of knowing the pecuniary situation of Long, against whom the witness had held various executions, not one of which could be collected, but all of which were returned, " No property found."   It should be remarked here, that the statement of these sheriffs covers the entire interval from 1839 to 1845, including the period of the alleged payment by Long, as well as that of his death.   It is proper further to observe, that on the judgment now under consideration, there were sued out two writs of *fieri facias*, one of them as late as January, 1840, on each of which writs was made the return of *nulla bona*.   It would, we think, challenge no ordinary degree of credulity to believe, that a man in whose possession no property could be found for five years previous to his death, and who in the case before us had resisted to the very extreme of the law, should; during the same time, have voluntarily discharged an obligation which it is shown he was both unable and unwilling to fulfil.

The returns upon the *fi. fa.* and *alias fi. fa.* sued upon this judgment, afford a satisfactory explanation of a circumstance from which it has been endeavored to deduce a presumption unfavorable to the appellee.   That circumstance is the lapse of time between the return upon the *alias* and the suing out of the *pluries fi. fa.* upon the judgment.   The solution is this : the plaintiff in the judgment having ascertained, by two experiments, the futility of process against the defendants, was unwilling for the time being, to repeat such experiments, which were not only useless but expensive ; but were, perhaps, induced subsequently to renew their efforts, by some change in the condition of parties, from which success was rendered more probable.

The remaining inquiry for consideration relates to the assignment or appropriation of the judgment, and the right or power of Fisher or his attorneys to make such appropriation for the benefit of Hunter.   The true character of the transaction

31 *

with reference to this judgment is disclosed in its history contained in the deposition of John A. Campbell, Esq., taken in this cause. The facts as therein narrated, are substantially these : The law firm of Gordon, Campbell, and Chandler, in the year 1837, having in their hands a very large amount of claims of the creditors of Fisher, in order to avoid being sued upon those claims, Fisher arranged a portion of them by giving the drafts specified in the answer of Hunter, and which were indorsed by Hunter. The residue of those claims he arranged by depositing various notes with the firm of Gordon, Campbell, and Chandler, to be collected by that firm, and by them to be applied in satisfaction of the debts of Fisher. Amongst the notes so deposited was that executed by Thomas Long, George D. Fisher, and the appellant, Hinkle, on which the judgment in the name of Wanzer has been obtained. And it may be in this place remarked, that in exhibit A. filed with the bill of the complainant below, and relied on by him, and which exhibit is the receipt of Gordon, Campbell, and Chandler, for the notes deposited with them by Fisher, after an enumeration of those notes, is contained the following stipulation, namely : " The proceeds of all which notes, as they shall be collected, are to be appropriated by us to the payment of any demands we may hold against the said Fisher and Johnson, upon their own debts, and not upon indorsements or liabilities for others." Here, then, we have a contract between Fisher and Johnson and their creditors, represented by Gordon, Campbell, and Chandler, who held various claims of those creditors against Fisher and Johnson — a contract founded on the consideration of forbearance as well as on the claims themselves, and therefore beyond the power of Fisher and Johnson to revoke or control — constituting Messrs. Gordon, Campbell, and Chandler trustees for the creditors of Fisher and Johnson, and with full power to appropriate the funds provided for their payment.

It is probable that every one of the notes placed in the hands of Messrs. Gordon, Campbell, and Chandler, bore upon it the indorsement of Fisher and Johnson, or of John Fisher ; but as it is not rational to impute to these persons the design to frustrate their arrangement in the very act of making it, we must conclude that such indorsement, if made, was designed to give more complete control of these notes to the persons to whose management the notes and their proceeds were expressly intrusted. Wanzer was a creditor of Fisher, on a note for $885.89, which note was in the hands of Gordon, Campbell, and Chandler, and was provided for and paid out of the funds or notes deposited with the firm ; but it would be absurd as well as unjust to the other creditors of Fisher and Johnson, to sup-

pose that to this demand on behalf of Wanzer, there was to be specifically appropriated out of the funds designed for all the creditors of Fisher, an amount equal to double that demand. This pretension, too, would contradict the explicit statements, on oath, of Messrs. Campbell and Chandler, who held and discharged the note due to Wanzer, who also recovered the judgment against Long, Fisher, and Hinkle, and who state that Wanzer's claim had been paid out of other securities of Fisher, in their hands, and that Wanzer had no interest whatsoever in the judgment rendered in his name.

Such being the history of this case, it would seem to follow that the right to the judgment against Long, Fisher, and Hinkle remained in Campbell and Chandler, to be appropriated by them under their agreement, to the creditors of Fisher, or to be so disposed of by Fisher, with their assent. Upon this view of the law, we can perceive no valid objection to the authority given by Gordon, Campbell, and Chandler, especially with Fisher's express sanction, to Hunter, the chief creditor of Fisher, to control and apply to his indemnity the judgment sought to be enjoined. No such objection, surely, can be sustained, unless it can be shown that an equitable interest cannot be assigned — a position which could rest upon no principle of justice, and which, at this day, it would be idle to attempt to sustain upon authority.

If the general indorsement by Fisher, accompanied with the delivery of the note of Long, Fisher, and Hinkle, to Gordon, Campbell, and Chandler, created in the latter an absolute legal right and property in that note, no exception could, of course, be taken to any exercise or application of the right and property so vested in them. If, on the other hand, the indorsement and delivery of the note created a trust for the benefit of the creditors of Fisher, and consequently for the benefit of Fisher himself, by his exoneration *pro tanto*, there remained in Fisher an equitable interest in the note and in the judgment rendered thereon, which he had a right, with or without the assent of the trustees, to assign or apply in payment of his creditors; such assignment or application he has made, in coöperation with those trustees, to his principal creditor, Hunter, and this act of Fisher in his lifetime has, since his death, been sanctioned by his personal representative.

Notwithstanding the strictness, particularly in the earlier cases in the courts of common law, with respect to assignments of equitable interests and *choses in action*, the books abound with cases showing that the rule at the common law has been much relaxed, or almost disregarded, by the courts of equity, which, from a very early period, have held that assignments for valua-

ble consideration, of a mere possibility, are valid, and will be carried into effect upon the same principle as they enforce the performance of an agreement, when not contrary to their own rules or to public policy. In the case of Wright v. Wright, 1 Ves. 412, it is said by Lord Hardwicke: "That such an assignment always operates by way of agreement or contract, amounting, in the consideration of the court, to this: that one agrees with another to transfer and make good that right or interest." By the same judge it is said, in the case of Row v. Dawson, 1 Ves. 331, that for such an assignment no particular words are necessary, but any words are sufficient which show an intention of transferring the *chose in action* for the use of the assignee.

It has been expressly ruled, that a mere expectancy, as that of an heir at law to the estate of his ancestor, or the interest which a person may take under the will of another then living, or the share to which such person may become entitled under an appointment or in personal estate, as presumptive next of kin, is assignable in equity. Hobson v. Trevor, 2 P. Wms. 191; Wethered v. Wethered, 2 Sim. 183; Smith v. Baker, 1 Y. and Coll. 223; Carleton v. Leighton, 3 Mer. 671; Hinde v. Blake, 3 Beav. 235. The numerous authorities upon this point are collated in the second volume of White and Tudor's Leading Cases in Equity, in the note of the editors upon the cases of Row v. Dawson, and Ryall v. Rowles, p. 204, *et seq.* A decision which bears very directly upon the case before us is that by Sir James Wigram, vice-chancellor, of Kirwin v. Daniel, 5 Hare, 500, in which it was ruled: "That where a creditor, in whose behalf a stake has been deposited by the debtor with a third person, receives notice of that fact from the stakeholder, the notice will convert the stakeholder into an agent for, and debtor to, the creditor."

In the present case, Gordon, Campbell, and Chandler were put in possession, by Fisher, of funds to be applied by them to Fisher's creditors, and had, by their written agreement, undertaken so to appropriate those funds. Hunter, a principal creditor of Fisher, is, by information received both from Fisher and from Gordon, Campbell, and Chandler, made cognizant of this deposit, and of the purpose to apply it to his indemnity. He accepts the proffer made him, and claims the benefit of it. And by instructions from Fisher, both verbal and written, as is proved in this cause, those depositories were directed to apply the funds under their control (amongst those funds the judgment against Long, Fisher, and Hinkle) to the benefit and protection of Hunter. Upon this single aspect of the transaction, can it be doubted that these depositories were authorized and bound to conform

to the instructions thus given? We think that both their authority and duty so to do admit of no doubt. The decree of the circuit court, dismissing the bill of the complainant in that court, being warranted by the view we have taken of the law and the evidence in this case, we order that decree to be affirmed.

## Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the southern district of Alabama, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed by this court, that the decree of the said circuit court in this cause be and the same is hereby affirmed, with costs.