J-S08011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSE ANTONIO SANTIAGO, JR. | : | |
| | : | |
| Appellant | : | No. 768 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 13, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001057-2021

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: APRIL 4,2024**

Appellant, Jose Antonio Santiago, Jr., appeals from the judgment of sentence entered April 13, 2023, as made final by the denial of his post-sentence motion on April 24, 2023.[1]  We affirm Appellant's convictions but vacate the amended judgment and remand for resentencing.

---

[*] Former Justice specially assigned to the Superior Court.

[1] For reasons explained more fully below, we shall treat the judgment of sentence originally imposed on April 13, 2023 as the judgment from which Appellant took this appeal.  In sum, the trial court imposed its sentence on April 13, 2023.  On April 24, 2023, Appellant filed a post-sentence motion challenging the weight of the evidence.  Appellant's post-sentence motion, filed on Monday, April 24, 2023, is deemed timely filed under our rules since the 10th day after the judgment was Sunday, April 23, 2023.  ***See*** Pa.R.Crim.P. 720(A)(1) ("a written post-sentence motion shall be filed no later than 10 days after imposition of sentence"); ***see also*** 1 Pa.C.S.A. § 1908 (omitting Sunday from computations of time); ***see also*** Pa.R.A.P. 107 (stating that 1 Pa.C.S.A. § 1908 applies to the Rules of Appellate Procedure).  The trial court denied Appellant's motion on the same day and, thereafter, Appellant's

*(Footnote Continued Next Page)*

The trial court summarized the facts and procedural history of this case as follows.

> On February 9, 2021, York City Police Department Officers, Andrew Groh and Thomas Ewald, were on patrol when they noticed a silver Kia Optima fail to come to a complete stop at a stop sign. The officers then observed the same Kia Optima roll through a steady red light, making a right turn. Because of the two traffic violations observed, Officer Ewald activated the patrol vehicle's emergency lights and sirens to initiate a traffic stop o[f] the Kia Optima.
>
> The Kia pulled over and Officer Groh approached the vehicle. As Officer Groh made his way to the passenger side door, the operator of the Kia fled the scene at a high rate of speed. While the vehicle was fleeing from the scene, officers of the West York Borough Police Department, who had observed the initial traffic stop, began to pursue the fleeing vehicle. A few blocks into the chase, the speed of the fleeing vehicle increased to over [70] miles per hour, at which time the West York [officers] slowed down and deactivated their emergency lights.

---

counsel timely filed the instant notice of appeal on May 24, 2023, which was within 30 days of the date on which the court denied Appellant's post-sentence motion. *See* Pa.R.Crim.P. 720(A)(2)(a) (where defendant files timely post-sentence motion, notice of appeal is due within 30 days of entry of order deciding the motion).

On April 28, 2023, after the trial court denied Appellant's post-sentence motion but before Appellant filed the notice of appeal, the Commonwealth filed an untimely motion to modify Appellant's sentence. *See* Pa.R.Crim.P. 721(B)(1) ("A Commonwealth motion for modification of sentence shall be filed no later than 10 days after imposition of sentence."). On May 1, 2023, the trial court granted the Commonwealth's motion and modified Appellant's sentence in accordance with the Commonwealth's request. Because the Commonwealth's motion to modify sentence was untimely and because the trial court improperly amended Appellant's sentence outside his presence, we shall treat the judgment originally imposed on April 13, 2023 as the operative sentence from which this appeal was taken.

> Even while slowing down, West York Borough Police [] Officer, Jonathan Hehnly, could observe the vehicle heading westbound. The West York . . . officers continued westbound, following the vehicle. Sight of the vehicle was lost around a small curve in the road. Only one side street is located along the route the Kia was driving, South Sumner Street. As the West York [officers] passed South Sumner Street, they saw a vehicle in the alley that appeared identical to the one they were pursuing. [The West York o]fficers then notified the York City officers *via* radio of the car's location. While . . . the West York [officers] made a U-turn to enter South Sumner Street, [the] York City police officers had turned onto the street.

> Once on South Sumner, West York . . . officers encountered a lone male, [Appellant], walking down the street from the direction of the parked vehicle. [The West York o]fficers noted that [Appellant] was sweaty, breathing heavily, and was seemingly nervous. [The West York o]fficers then asked [Appellant] for his identification. While attempting to acquire his identification, [Appellant] made statements to the officers regarding where he was coming from or going to and referencing a gas station that was located on the opposite side of town. Upon presenting his identification to the officers, [Appellant] continued to place his hands in his pocket, at which point [the] officers detained [Appellant]. At this point, the investigation was handed over to York City Police[.]

> When Officer Ewald approached [Appellant], he completed a protective pat-down of [his] outer clothing. Prior to the pat-down, the [o]fficer noted seeing a lanyard hanging out of [Appellant's] left pants pocket. During the pat-down, [Officer Ewald], knowing that the items of [Appellant's] pocket were car keys, removed those keys from [his] pocket. [Officer Ewald] then hit the lock button on the key fob and received a positive response from the Kia down the street. At this point, [Appellant] was taken into custody.

Trial Court Opinion, 10/7/22, at 1-3.

A subsequent search of Appellant's person revealed a small bag of marijuana. *Id.* at 4. In addition, a "sweep of the area surrounding the [Kia Optima] was conducted" and revealed "a substantial amount of crack cocaine

. . . in a fanny pack in a yard adjacent to the Kia Optima and a firearm was located on the ground less than half a block away from the vehicle." *Id.* Importantly, there were "footprints in the snow leading from the [Kia Optima] to all contraband found on the scene." *Id.*

Thereafter,

> [Appellant] was charged with the following offenses . . . : count one, person not to possess a firearm, . . . count two, firearms without a license, . . . count three, fleeing and eluding, . . . count four, possession with intent to deliver a controlled substance, . . . count five, possession of marijuana – small amount, . . . count six, driving under suspension, . . . count seven, obedience to traffic control devices, . . . count eight, traffic control signals,. . . and count nine, simple possession.
>
> [Appellant], by and through trial counsel[,] Clasina Houtman, Esquire, filed an omnibus pretrial motion to suppress and an amended pretrial motion to suppress. On April 6, 2022, a hearing took place before the Honorable Kathleen J. Prendergast. On October 7, 2022, Judge Prendergast denied the motion.
>
> On January 12, 2023, after a jury trial . . ., [Appellant] was found guilty of count one, person not to possess a firearm; count two, firearms without a license; count three, fleeing and eluding; count six, driving under possession; and count nine, simple possession.[2]
>
> On April 13, 2023, [Appellant] was sentenced to an aggregate [term] of seven [and one-half] to [15] years in a state correctional institution, with all counts running concurrently. [Appellant] was not eligible for the state drug treatment program or Recidivism Risk Reduction Incentive ("RRRI").
>
> On April 24, 2023, [Appellant] filed a post-sentence motion for a new trial pursuant to Pa.R.Crim.P 607. [The trial court] denied [Appellant's] motion [that day].

---

[2] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 75 Pa.C.S.A. § 3733(a), and 35 P.S. § 780-113(a)(16), respectively.

Trial Court Opinion, 7/27/23, 1-2 (unnecessary capitalization and footnote omitted) (footnote added).

On April 28, 2023, the Commonwealth filed a motion to modify Appellant's sentence, asking the trial court to add 12 months of re-entry supervision consecutive to his sentence pursuant to 61 Pa.C.S.A. § 6137.2.[3] On May 1, 2023, the trial court granted the Commonwealth's motion and amended its prior order "to include the mandatory one-year re-entry supervision requirement pursuant to 61 Pa.C.S.A. § 6137.2." Trial Court Order, 5/1/23, at *1 (unpaginated). This timely appeal followed.

Appellant raises the following issue on appeal:

Did the [trial] court err in denying [Appellant's] suppression motion because: 1) assuming his initial seizure was permissible, his frisk was illegal where the officers lacked reasonable

_____

[3] Section 6137.2 states, in relevant part, as follows:

**(a) General rule.**--This section applies to persons committed to the department with an aggregate minimum sentence of total confinement under 42 Pa.C.S. § 9756(b) (relating to sentence of total confinement) of 4 years or more. Regardless of the sentence imposed, this section does not apply to persons sentenced to death, life imprisonment, persons otherwise ineligible for parole or persons subject to 42 Pa.C.S. § 9718.5 (relating to mandatory period of probation for certain sexual offenders).

**(b) Reentry supervision.** --Any person under subsection (a) shall be sentenced to a period of reentry supervision of 12 months consecutive to and in addition to any other lawful sentence issued by the court.

61 Pa.C.S.A. § 6137.2(a)-(b).

suspicion that he was armed and dangerous; 2) even if the frisk was allowed, the "plain feel" doctrine did not permit reaching into his pocket to remove keys where they were not inherently incriminating; and 3) the court based its inevitable discovery conclusion on an inaccurate factual finding and unwarranted supposition?

Appellant's Brief at 5.

Appellant's sole claim challenges the trial court's denial of his suppression motion. Our standard of review for an order denying a motion to suppress is well established.

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Mbewe**, 203 A.3d 983, 986 (Pa. Super. 2019), *quoting*

**Commonwealth v. Kemp**, 195 A.3d 269, 275 (Pa. Super. 2018).

Herein, Appellant does not challenge the legality of his initial seizure by the West York police officers. Instead, Appellant claims that Officer Ewald, in performing a protective pat-down of his outer clothing, reaching into his pocket, and pulling out his car keys, subjected him to an illegal search and

- 6 -

seizure. More specifically, Appellant contends that the initial pat-down was conducted absent "sufficient information to warrant the belief that [Appellant] was armed and dangerous" and, even if the pat-down were permissible, Officer Ewald "exceeded the scope of a proper frisk by pulling keys out of his pocket." Appellant's Brief at 22 and 26. Appellant thus concludes that the trial court erred in failing to suppress the car keys, the only evidence linking him to the Kia Optima, which were seized in violation of his constitutional rights. *Id*. at 32 and 34-35.

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019). "Generally, for a search or seizure to be reasonable under the Fourth Amendment and Article I, Section 8, police officers must obtain a warrant before conducting the search or seizure. A search or seizure without a warrant 'is presumptively unreasonable . . . subject to a few specifically established, well-delineated exceptions.'" *Int. of T.W.*, 261 A.3d 409, 416 (Pa. 2021) (quotation omitted).

One well-known exception to the Fourth Amendment and Article I, Section 8's warrant requirement is "commonly referred to as the *Terry*[4] stop

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

and frisk." *Id.* (footnote added). In order for a "stop and frisk to be constitutionally sound," both of the following conditions must be met:

> First, the investigatory stop must be lawful. That requirement is met in an on-the street encounter . . . where the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person is armed and dangerous.

*Id.* at 417 (quotation omitted). Importantly, in a recent decision, our Supreme Court explained when a police officer, who is engaged in a lawful *Terry* frisk, may remove an object from a suspect's clothing. It stated:

> If a police officer conducting a lawful *Terry* frisk detects an object within a suspect's clothing, assuming no other exception to the general warrant requirement applies, the officer may remove the object under one of two justifications. Pursuant to *Terry*, and consistent with Justice Newman's opinion in [*Commonwealth v. Taylor*, 771 A.2d 1261 (Pa. 2001) (plurality)], a police officer may remove an object from within a suspect's clothing under the reasonable suspicion that the object is a weapon. If, however, during the frisk the police officer is able to determine that the object is not a weapon, pursuant to [*Minnesota v. Dickerson*, 58 U.S. 366 (1993)], the officer may only remove the object if, by touch, it is immediately apparent that the object is illegal contraband.

*Id.* at 422.

In this instance, Officer Ewald testified at the suppression hearing regarding the circumstances of the *Terry* frisk and his decision to remove the car keys from Appellant's pocket. The relevant exchange is as follows:

> Q. What did you do when you met with [Appellant] who was being detained by [the] West York [officers]?

A.  I observed a lanyard in his pocket and began to pat him down.

Q.  When you – what did you feel when you patted him down?

A.  A set of car keys, that I believed were car keys.

Q.  What kind of car keys were those?  Make and model?

A.  Oh, Kia keys, sir.

N.T Suppression Hearing, 4/6/22, at 35.

A review of the foregoing demonstrates that, undoubtedly, Officer Ewald did not believe that the object removed from Appellant's clothing, *i.e.*, the car keys, was a weapon or illegal contraband.  To the contrary, Officer Ewald admitted that, upon conducting a pat-down of Appellant's person, he readily discerned the object in Appellant's pocket to be car keys.  He further admitted that there is nothing "inherently illegal" about having car keys.  ***Id.*** at 45-46.  "Accordingly, the search at bar can only be justified if[,] at the moment [Officer Ewald] conducted the search, he had probable cause to arrest Appellant."  ***Commonwealth v. Trenge***, 451 A.2d 701, 705 (Pa. Super. 1982).  If so, the "officers were also authorized to search [Appellant] incident to that arrest or immediately prior to placing him under arrest."  ***Commonwealth v. Young***, 162 A.3d 524, 529 (Pa. Super. 2017).

Our Supreme Court has defined probable cause as follows:

Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the [stop], and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a

probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014) (citation omitted).

In this instance, Appellant was arrested for, *inter alia*, fleeing and eluding a police officer which, pursuant to Section 3733 of the Motor Vehicle Code, is defined as follows:

Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

75 Pa.C.S.A. § 3733(a).

A review of the suppression hearing transcripts reveals the following. On February 9, 2021, York City police officers, including Officer Ewald, observed the Kia Optima fail to come to a complete stop at a stop sign and then roll through a steady red light. As such, Officer Ewald activated his emergency lights and sirens to initiate a traffic stop. Initially, the Kia Optima pulled over but, after Officer Ewald's partner, Officer Groh, approached the vehicle, the Kia Optima took off, fleeing the scene at a high rate of speed, traveling westbound. Importantly, this interaction was also observed by police officers from the West York Borough Police Department, namely, Officer Hehnly. ***Id***. at 6. Officer Hehnly testified that, after the Kia Optima drove off, he pursued the vehicle with activated emergency lights and sirens at a high rate of speed "about seven blocks to the west." N.T. Suppression

Hearing, 4/6/22, at 7. Officer Hehnly also testified that, once his speed increased to over 70 miles per hour, the officers slowed down and deactivated their emergency lights and the Kia Optima continued to travel westbound, "in the area of Highland and West King." *Id.*

Thereafter, Officer Hehnly explained that, after the officers discontinued the pursuit of the Kia Optima, they continued "on West King westbound." *Id.* Officer Hehnly also stated that the route the Kia Optima traveled has only one side street – South Sumner Street – and that, as the officers passed South Sumner Street, they observed a vehicle in the alleyway, the appearance of which was identical to the Kia Optima. As such, Officer Hehnly testified that they made a U-turn and began to travel on South Sumner Street. At that time, the York City officers also arrived on South Sumner Street, and the officers from West York and York City "went over the radio" to discuss the vehicle in the alleyway and also "spotted an individual walking right up the street from the vehicle," approximately "the length of [a] courtroom" away from the vehicle. *Id.* at 9.

Officer Ewald and his partner proceeded to the vehicle and identified it as the Kia Optima. At that time, Officer Hehnly and his partner subsequently approached the individual, Appellant, and asked for his identification. Appellant was sweaty, breathing heavily, appeared to be nervous, and indicated that he was traveling from or going to a gas station which was "in the complete opposite" side of town. *Id.* at 11 and 27. Because Appellant continued to place his hands in his pockets, the West York officers detained

- 11 -

Appellant and then turned the investigation over to the York City police officers, including Officer Ewald. Officer Ewald testified that, once he saw Appellant, he planned to "take him into custody for fleeing [the] traffic stop." *Id.* at 35. As such, Officer Ewald "began to pat [Appellant] down," felt a set a car keys, removed the keys from Appellant's pocket, "hit the lock button on the key fob and [] received a positive response from the [Kia Optima]." *Id.* at 36. He then arrested Appellant.

A review of the foregoing demonstrates that the circumstances were sufficient to warrant a man of reasonable caution to believe that Appellant was the operator of the Kia Optima and, as such, violated 75 Pa.C.S.A. § 3733(a), fleeing and eluding. We therefore conclude that, upon approaching Appellant, Officer Ewald had probable cause to arrest him. We further conclude that Officer Ewald's search of Appellant's person, including the pat-down and removal of the car keys from Appellant's pocket, was constitutionally permissible as a search incident to lawful arrest. *See Commonwealth v. Williams*, 305 A.3d 89, 97 (Pa. Super. 2023) (holding that a search of the appellant's backpack was constitutionally permissible as a search incident to lawful arrest because "the search took place immediately prior to the time [the a]ppellant was transported by ambulance . . . and then promptly arrested"); *Young*, 162 A.3d at 528 (holding that the officers were permitted to search the appellant "incident to the arrest or immediately prior to placing under arrest" because they had probable cause to arrest him for possession of a controlled substance); *Trenge*, 451 A.2d at 720, n.8 ("[A] search

conducted immediately prior to an arrest is as valid as a search conducted subsequent and incident to the arrest provided the officer had probable cause to arrest prior to the search as long as the contraband discovered in the search is not used as justification or probable cause for the arrest."). Based upon the foregoing, we affirm the trial court's order denying Appellant's motion to suppress on this basis.[5]

Upon further review of the record, however, we must consider, *sua sponte*, whether the trial court erred in amending its prior sentencing order to "include the mandatory one-year re-entry supervision requirement pursuant to 61 Pa.C.S.A. § 6137.2." Trial Court Order, 5/1/23, at *1 (unpaginated). As noted above, Appellant's judgment of sentence was imposed on April 13, 2023. On April 28, 2023, the Commonwealth filed a motion to modify Appellant's sentence, contending that the trial court erroneously failed to impose a 12-month period of reentry supervision pursuant to 61 Pa.C.S.A. § 6137.2. On May 1, 2023, the trial court granted the Commonwealth's motion and amended its prior order "to include the mandatory one-year re-entry supervision requirement pursuant to 61 Pa.C.S.A. § 6137.2." Trial Court Order, 5/1/23, at *1 (unpaginated).

---

[5] It "is well settled that where the result is correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself." **Commonwealth v. Lehman**, 275 A.3d 513, 520 n.5 (Pa. Super. 2022) (quotation omitted).

As a preliminary matter, we must determine whether the trial court had the authority to amend its prior sentencing order in response to an untimely Commonwealth post-sentence motion under Pa.R.Crim.P. 721(B)(1).[6]

It is well-settled that "[c]laims concerning the illegality of the sentence are not waivable." ***Commonwealth v. Vasquez***, 744 A.2d 1280, 1284 (Pa. 2000) (quotation omitted). Indeed, our Supreme Court previously stated:

> If a sentence is within the statutory limits, it is legal. When a trial court imposes a sentence outside of the legal parameters prescribed by the applicable statutes, the sentence is illegal and should be remanded for correction. Trial courts never relinquish their jurisdiction to correct an illegal sentence.

***Id***. (internal citations omitted). Importantly, this is true even if the Commonwealth fails to timely comply with Pa.R.Crim.P. 721(B)(1). ***See id***. (explaining that the Commonwealth's "non-compliance with Rule [721] creates no bar" to reviewing the legality of an appellant's sentence); ***see also Commonwealth v. Smith***, 598 A.2d 268, 270 (Pa. 1991).

In this instance, on April 13, 2023, the trial court sentenced Appellant to an aggregate term of seven and one-half to 15 years' incarceration. Hence, Appellant was subjected to the mandatory reentry supervision requirements of 61 Pa.C.S.A. § 6137.2 (stating that any person "committed to the

---

[6] As we noted above, Appellant's judgment of sentence was imposed on April 13, 2023. The Commonwealth filed its motion to modify sentence on April 28, 2023. ***See*** Pa.R.Crim.P. 721(B)(1) ("A Commonwealth motion for modification of sentence shall be filed no later than 10 days after imposition of sentence."). Because the Commonwealth's motion was filed 15 days after the imposition of Appellant's sentence, it was manifestly untimely.

department with an aggregate minimum sentence of total confinement under 42 Pa.C.S.[A.] § 9756(b) . . . of [four] years or more" . . . "**shall** be sentenced to a period of reentry supervision of 12 months consecutive to and in addition to any other lawful sentence issued by the court") (emphasis added). As such, the trial court issued an illegal sentence on April 13, 2023 when it omitted the requirement for reentry supervision. ***See e.g. Vasquez***, 744 A.2d at 1284 (holding that the trial court issued an illegal sentence when it omitted the mandatory fine of $5,000.00 in "contravention to 18 Pa.C.S.A. § 7508(a)(2)(i)"). We therefore conclude that "the trial court possessed the authority to mold a new, statutorily correct sentence" even though the Commonwealth's request to do so was untimely. ***Id.***

Our inquiry, however, does not end there, as a review of the record reveals that the trial court amended Appellant's April 13, 2023 sentence outside of his presence. Indeed, there is no indication on the trial court docket that, at the time the trial court issued its May 1, 2023 order imposing a consecutive term of 12 months of reentry supervision, the trial court held a resentencing hearing or that Appellant was otherwise present in court when the amended sentence was imposed. Importantly, Pa.R.Crim.P. 602(A) states that the "defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence." Accordingly, we conclude that the trial court entered an illegal sentence by amending Appellant's sentence outside of his presence. ***Compare Commonwealth v. Blauser***, 293 A.3d 603 (Pa. Super. 2023)

- 15 -

(non-precedential decision) (explaining that the trial court "inadvertently omitted the mandatory [12]-month reentry supervision pursuant to 61 Pa.C.S.A. § 6137.2" and subsequently "held a second hearing . . . to correct this oversight"); *Commonwealth v. Johnson*, 297 A.3d 719 (Pa. Super. 2023) (non-precedential decision) ("After the trial court amended its original sentencing order to include a consecutive term of mandatory probation, [Johnson] filed a post-sentence motion in which he argued that the trial court erred because it did not impose the amended sentence in open court. On March 28, 2022, the trial court granted Appellant's post-sentence motion, vacated the previous judgment of sentence, and held a new sentencing hearing."). We therefore vacate the amended sentence and remand for resentencing consistent with this decision.

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished. Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/04/2024

- 16 -