### COATES v. UNITED STATES.

#### (Circuit Court of Appeals, Fourth Circuit. February 7, 1893.)

#### No. 26.

CLAIMS AGAINST THE UNITED STATES—MATERIAL MAN'S CLAIM.

Certain contractors agreed to build for the lighthouse board a steamer for $66,900, payable in installments at specified stages in the work, the contract and all moneys due thereunder to be forfeited for breach. Material men, who had been promised payment of their claims out of certain installments, obtained from the contractors a power of attorney authorizing them to collect $6,000 out of the last installment, and placed it on file with the naval secretary of the lighthouse board, who promised that if they would continue the delivery of materials the government would pay their claim to the amount of $6,000. At this time the government had the right to annul the contract for breach. In a correspondence with the naval secretary, who was in doubt whether the money could be thus paid under Rev. St. §§ 3477, 3737, the secretary of the treasury stated that the claim could be paid only on condition that the account for the money when due under the contract should be stated in the name of the contractors, and receipted for by them before payment to the material men. Several months later the contract was forfeited for breach. The last installment never became due to the contractors, and the vessel was completed by the board at a cost, not including this claim, of $726.10 less than the contract price. *Held*, that the material man could recover from the government only the sum of $726.10. Hughes, J., dissenting.

In Error to the Circuit Court of the United States for the District of Maryland.

At Law. Action by L. Roberts Coates, trading as Coates & Co., against the United States, to recover for materials used in the construction of a steamer. Judgment for defendant. Plaintiff brings error. Reversed.

Frank P. Clark, for plaintiff in error.

John T. Ensor, U. S. Atty.

Before GOFF, Circuit Judge, and HUGHES and SIMONTON, District Judges.

SIMONTON, District Judge. The facts of this case are these: Ramsay & Son were under contract to build for the lighthouse board a twin screw steamer, afterwards known as the "Zizania." The contract price was $66,900, to be paid as follows: One fifth, less 10 per cent., when the vessel was framed and up; one fifth, less 10 per cent., when she was fully plated and keelson fitted and fastened in place; one fifth, less 10 per cent., when all the decks are laid, masts set up and fastened in place; one fifth, less 10 per cent., when vessel is launched, and boiler and engine in place; the remainder, with the re-

served percentages, when the steamer is completed, received, and accepted. It was also provided that, in case of noncompliance with the contract on the part of the Ramsays, the lighthouse board could declare the contract forfeited and annulled, with no appeal from its decision, whereupon all money due under the contract would also be forfeited. Seven months was the time limited for completion of the work. The contract was entered into 5th October, 1887. On 8th June, 1888, it was declared forfeited. The lighthouse board completed the vessel at a cost, all told, of $66,173. Ramsay & Son purchased from Coates & Co., appellants here, steel plates to be used in constructing the vessel, and owed the money. Coates & Co. had had previous dealings with the Ramsays, and had received from them one of the installments paid by the government. They had been promised payment out of others, but the second and third installments had been diverted by the Ramsays to other creditors. In February, 1888, a part of the plates having been delivered, Coates & Co. became uneasy, and obtained from Ramsay & Son a power of attorney authorizing them "to collect from the lighthouse board, out of the last payment that will be due to us on account of our contract with the lighthouse board to construct the steamer Zizania, the sum of $6,000." At that time Ramsay & Son produced and showed to Coates & Co. their contract. Coates & Co. took this power of attorney, with a letter from Ramsay & Son, to the head of the board, requesting that it be held, and the amount paid according to its terms, and delivered them to Commander Evans, the naval secretary, who received the power of attorney, and put it on file. They continued the delivery, but, again becoming uneasy, one of them went to Washington, and saw Commander Evans. He says that Commander Evans told him to go on with the delivery, and that the government would pay the bill or order amounting to $6,000. This was the latter part of February, 1888. The record shows that on 21st February, 1888, Commander Evans wrote to the secretary of the treasury, inclosing the contract with the Ramsays, their letter, and the power of attorney, and asking if the request therein contained could be complied with, whether the payment could be made to Coates & Co., in consideration of sections 3477, 3737, Rev. St. U. S., and whether the instrument inclosed was in such form as to thoroughly secure the interests of the government. The secretary replied that the request of the Ramsays could only be complied with upon the condition "that the account for the payment of the money in question, when due under the provisions of the contract, be stated in the name of Messrs. Ramsay & Son, and that they be required to sign a receipt for the same before it is paid over to Coates & Co." The letters of Mr. Reeve, acting solicitor of the treasury, of 24th February, 1888, and of 10th January, 1891, speak of this power of attorney; the first of these letters as a request for the payment "of $6,000 due on the final payment for said vessel under their contract;" the second, for the payment of the sum of $6,000 out of any money withheld by the department in the settlement with the contractors." From the record it is clear that Coates & Co., the lighthouse board, the acting solicitor, and the secretary of the treasury dealt with this power of attorney,

with full knowledge of, and with reference to, the contract; that all of them understood that the money was to be paid out of the last moneys coming to the contractor under the contract, and that the stringent provisions as to forfeiture were known to them all. It is also clear that the questions which embarrassed Commander Evans were whether such a power of attorney could be received by him in view of sections 3477, 3737, Rev. St., the one of which forbade the assignment of a claim against the government until the claim had been allowed, the amount due ascertained, and a warrant issued therefor; the other forbidding the assignment of any claim or order on the United States; and also whether the power of attorney impaired the security of the interests of the government. The secretary permitted him to recognize the power of attorney to a certain extent, but he required the account to be stated in the name of Ramsay & Son, and to be receipted by them, before Coates & Co. got the money. In this way all set-off against Ramsay & Son was secured to the government, the contract with them was not impaired, and all idea of a new contract with Coates & Co. was forbidden. All that Commander Evans could have intended was this. Coates & Co. had been disappointed in the receipt of other money due to Ramsay & Son and paid on this account, although it had been promised to them. They now present a power of attorney authorizing them to receive the last amounts which should become due under the contract. Commander Evans assured them that, in despite of the provisions of the sections of the Revised Statutes, and without further apprehension from Ramsay & Son, they would get the money which, under the contract, would become due to the Ramsays. If he intended anything more than this, his action was void, and Coates & Co. knew that it was void. He could not make a new contract with Coates & Co. He could not amend that already made with Ramsay, and waive any forfeiture. He could not promise absolutely and at all events to pay Ramsay $6,000 through Coates & Co. Now, Ramsay & Son forfeited their contract. The sum of $6,000 never was due to them on the last installment, or on any installment after the third. As Coates & Co. held a power of attorney for the payment of the money out of this last installment only, their right never came into existence, as there was nothing for it to operate on. They have no right in law and none in equity against the United States which a court can enforce for the $6,000.

The jurisdiction of this court is concurrent with that of the court of claims. The court of claims has jurisdiction of all claims founded upon the constitution of the United States or any law of congress except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claim the party would be entitled to redress against the United States either in a court of law, equity, or admiralty, if the United States were suable. 24 St. at Large, p. 505. "The United States can be sued for such causes, and such causes only, as they have by act of congress permitted. Neither the court of claims nor this court can hear and

determine any claim against the United States except in cases and under the conditions defined by congress." U. S. v. Gleeson, 124 U. S. 258, 8 Sup. Ct. Rep. 502. It is very clear that in this case there was no contract, expressed or implied, with Coates & Co. that they should furnish plates to the government, and should be paid for them at all events. The contract was with Ramsay & Son, and remained with them. When the last payment to Ramsay & Son should have become due under the terms of the contract, the account was to have been made out in their name, and receipted by them; and when this was done it was promised by the disbursing officer that he would turn over the money to Coates & Co. The conditions then were that the contract with Ramsay & Son should continue unchanged, and should be fulfilled; that when under it any money became due as the last payment to Ramsay & Son, they should receipt for it, and that then, recognizing the wish of Ramsay & Son that Coates & Co. should receive it, it would be paid to them. Coates & Co., with full knowledge of the contract, assented to be reimbursed out of the last payment which should become due to Ramsay & Son, of course with the understanding if any should become due. This is the full extent of any contract with them. It is only a contract authorized by law that the court of claims can consider. Bonner v. U. S., 9 Wall. 160. And for the same reasons there are no damages, liquidated or unliquidated, to which Coates & Co. are entitled against the United States. They could not have been misled. They knew the contract, that it was liable to forfeiture, and that no one had the right to change its terms. In this connection it must be borne in mind that the whole appropriation for this vessel was $68,230. 24 St. at Large, p. 225. Her cost was $66,193, not including the bill of Coates & Co. If congress had considered this claim, had recognized an obligation, and had referred it to the court of claims or to this court, as in Roberts v. U. S., 92 U. S. 46, and in Vigo's Case, 21 Wall. 648, the court might perhaps have gone outside the rules of law, and have considered the hardship of Coates' case. But treating it as we would a case between natural persons, we are bound to hold that a principal cannot be held liable for any dealings between his servant and a third party who had full knowledge of the limitations of the authority of the servant with whom he dealt. They have a claim for a part of this money, which we can allow. The contract price was $66,900; the actual cost, $66,173; leaving $726.10. In the contract it is provided that in case of noncompliance the contract may be forfeited, but even in case of forfeiture the contractor would be liable to the government for all damages occasioned by the noncompliance. It appears that no damages have accrued, and that, on the contrary, the government is better off by $726.10. As the contractors would have suffered the result if it occasioned loss, they should enjoy the result as it has been a gain. The maxim "qui sentit commodum sentire debet et onus" is true when reversed. He who bears the burden should enjoy all advantage accruing from it. A decree should be entered for appellant for this sum of $726.10. With regard to the remainder of the claim, it appears that they furnished the plates, and that the

plates went into the vessel, and that they have not been paid. As we have seen, they have no right in law or equity to hold the government responsible. But they have a strong claim upon the generosity of the government. This is within the province, not of the courts, but of congress.

The decree of the circuit court is reversed and the case remanded, with instructions to enter judgment for the plaintiff in the sum of $726.10 and costs.

HUGHES, District Judge, (dissenting.) Jurisdiction in this case is derived from the judiciary act of March 3, 1887, which authorizes the suit to be in the form of petition, and to be instituted in cases where the petitioner would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable. Such petition is an action at common law, or a bill in chancery, or a libel in admiralty, according as the redress sought and nature of the claim may determine. In the present case the proceeding is clearly one for relief in equity. The petitioner, while he had redress by attachment in his own power, was assured by the agent of the defendant that his claim would be paid, and that the defendant would not take steps apprehended by petitioner that would defeat its payment. Relying upon the good faith of the defendant in giving these assurances, petitioner allowed property which he could have replevied to be used by the defendant, only to find the payment of his claim defeated by the defendant's resort to the very steps which he had been assured would not be taken. This petition is therefore in the nature of a bill in chancery for equitable relief. Yet we can give no effectual redress. Our decree can be but a mere recommendation to congress for an appropriation. The case in detail is as follows:

The naval secretary of the lighthouse board of the United States contracted on the 12th of February, 1887, with Ramsay & Son, of Baltimore, for the construction of a steel twin screw steamer, which was afterwards named the Zizania. The vessel was to be built according to specifications and drawings which were made part of the contract. The amount agreed to be paid and received was $66,900. This sum was to be paid in five installments respectively as the work should reach stages specifically defined in the contract. The contract was to be liable to forfeiture by the secretary of the treasury if the work should not be completed at the end of seven months from the date of its approval by the secretary, and $35 was to be forfeited by Ramsay & Son for each day's delay beyond that period in completing the steamer.

Ramsay & Son made poor progress with the work. The ship was not completed by October, 1887. They fell behind not only with their work, but in their payments to men and firms from whom they obtained material. One of the firms to which they became indebted was that of Coates & Co. of Baltimore, for steel plates and other material. On the 18th of February, 1888,—12 months after the contract had been made, and 5 months after the steamer had become liable to forfeiture by the United States at their discretion,—

Ramsay & Son gave to Coates & Co. a power of attorney to collect from the lighthouse board, at Washington city, the sum of $6,000 then due to Coates & Co. for plates, etc., which had been supplied to Ramsay & Son for this vessel, most of them still lying in the ship yard, and not yet put into the steamer.

A letter from Ramsay & Son, addressed to the chairman of the board, accompanied this power of attorney, stating that the $6,000 was for value received in steel plates furnished for the steamer by Coates & Co. The power of attorney and the letter both stated expressly that this money was to be paid out of the final payment that might be due to Ramsay & Son on account of the steamer Zizania, and the letter requested that the board should hold this order, and pay the amount when it might be due. The power of attorney and the letter were promptly presented by L. R. Coates, of· the firm of Coates & Co., to Commander R. D. Evans, at Washington, then in charge of the business of the lighthouse board, who was informed that, unless the amount due was paid, the firm would attach the material in the ship yard, and prevent its being put into the vessel. L. R. Coates testifies that Commander Evans took possession of these papers, and placed them on file, and assured him that he would see the claim paid.

Commander Evans stated to this witness that the government did not care to declare the contract forfeited, and that, while he did not believe his firm could sustain a mechanic's lien against the engine, boilers, etc., yet he did not care about the government being put to the delay which the attachment would entail, nor desire that Coates & Co. should cease furnishing material for the ship, and thereby cause further delay. On the faith of what occurred in this interview, Coates & Co. allowed their material to be put into the Zizania. Afterwards, to wit, on the 8th of June, 1888, the government found it necessary to forfeit its contract with Ramsay & Son, and to complete the vessel itself. The final payment, therefore, did not become due nor become payable to Ramsay & Son. The cost of completing the vessel consumed the residue of the contract price of its construction, except about $726; and this cost of completion did not embrace any payment to Coates & Co. for the material which, on the assurance of Commander Evans, which has been stated, they had allowed to be built into the Zizania.

The record shows that a few days after the interview between L. R. Coates and Commander Evans the payment of the claim of Coates & Co. was the subject of official correspondence among officers of the treasury. Acting Solicitor of the Treasury F. A. Reeve, in a letter to the secretary of the 24th of February, 1888, advises that the claim of Coates & Co. for $6,000 should be paid out of the sum that should be finally due to Ramsay & Son, but that the account should be stated in the name of Ramsay & Son, who should be required to receipt for the draft issued for it, before its delivery to Coates & Co. A letter of March 5, 1888, from Hugh S. Thompson, assistant secretary of the treasury, referring to and approving of the letter of the acting solicitor, and addressed to the chairman of the lighthouse board, informs the chairman that "authority is granted to the

board for the payment of the amount named in the manner suggested in the letter of the acting solicitor."

Nearly three years after the date of the two letters just alluded to, to wit, on the 10th of January, 1891, the acting solicitor of the treasury, F. A. Reeve, addressing the secretary of the treasury, says, among other things:

"Assuming that the power of attorney dated February 18, 1888, for $6,000, referred to by Commander Evans, is the same power of attorney executed to Coates & Co. by Ramsay & Son, I am of opinion that the sum of $6,000 should be paid to Coates & Co. out of any moneys withheld by the department in the settlement with the contractors. If, however, the money has been disbursed to the contractors or other parties, then I should recommend that upon application of Coates & Co. the case be sent to the court of claims, as suggested by Commander Evans in his letter of January 11th, 1889."

This opinion was written, as appears upon its face, apropos of a letter received by the secretary of the treasury from Commander Evans, suggesting his inability to adjudicate "as to what amounts should be paid by the lighthouse board for sums due to creditors of Ramsay & Son for materials furnished and actually built into the Zizania, and for money loaned them, ostensibly for the prosecution of the work." Coates & Co. adopted the recommendation of the solicitor of the treasury, except that they brought their suit in the circuit court of the United States for Maryland, under the option given in section 2 of the judiciary act of March 3, 1887, (24 St. at Large, p. 505,) of suing in such cases as the one at bar, either in the court of claims at Washington, or a circuit court of the United States. This suit of Coates & Co., petitioners below, was dismissed by that court with costs, and is here by writ of error.

If technicalities could be held to defeat equitable claims, this case would be clearly with the defendant. The power of attorney from Ramsay & Son to Coates & Co. expressly provided for its payment out of the final or fifth installment of money that should be due to Ramsay & Son; and the fifth installment never fell due. Promises and pledges by individual officers of the government do not, in general, bind the government, and cannot be enforced by suit. Hence suits brought on such promises and pledges against the government cannot and should not be maintained; and so the mere assurances given by Commander Evans to Coates & Co. that his claim should be paid cannot be recognized as binding upon the government. But this is not equivalent to saying that equitable claims cannot arise against the government, just and binding upon its conscience, under any circumstances whatever.

In the case before us the plaintiffs supplied a large quantity of material necessary in the construction of the ship which contractors were building for the government. They had been promised payment out of the third and fourth installments of money that should accrue to the contractors, and had found their claim postponed to more exacting creditors. They consented to accept a power of attorney, pledging payment out of the final installment to become due to the contractors. Most of the material for which this claim was due was in the yard, but not put upon or built into the ship. It was their right to reclaim this material unless payment for it were

assured. They accordingly went to Washington city to present their power of attorney, and learn whether or not it would be. paid. There was one contingency in which it certainly would not be paid, to wit, the forfeiture by the government of its contract with Ramsay & Son. For five months it had been optional with the government to declare this forfeiture. It was material for Coates & Co. to know whether it intended to exercise this option, an act which would nullify their claim; and this was a chief point of solicitude with the holders of the power of attorney, and their chief subject of inquiry at Washington.

There seems to have been a very full conversation on the subject between Commander Evans and L. R. Coates, the result of which was that Coates became confident that the forfeiture would not be declared, and that the final installment of construction money would accrue to the contractors, and would be available for the payment of his claim. Believing from what Commander Evans said to him that there would be no forfeiture, and that their claim would be protected and honored by the authorities at Washington, Coates & Co. allowed their material to be put into the ship, but only to find in a few months that their confidence in the assurance which had been given them had beeen misplaced.

There is no pretense that the officers of the government did not act in the utmost good faith. It became necessary in dealing with these contractors to declare a forfeiture in June, which they had no intention of declaring in the preceding February. Throughout, their action was taken in the utmost good faith; and it is one of the chief merits of this claim that it is due upon equities not in the least tainted with fraud or misconduct. The authorities in charge of the matter have already adjudicated this claim in favor of Coates & Co., and I can discover no reason why the court should refuse to do likewise.

The solicitor of the treasury, in his letter of 10th of January, 1891, already referred to, says:

"H. A. Ramsay & Son, of Baltimore, the contractors for building the Zizania for the lighthouse board, being indebted to Coates & Company in a large amount for materials, etc., executed a power of attorney for $6,000. It was optional with the government to recognize or not this power of attorney. It appears that Commander Evans, the naval secretary of the lighthouse board, did recognize it, and that Coates & Company understood they were to be paid this sum. Good faith and fair dealing would require that the arrangement be carried out. There can be but little doubt that the then secretary of the board not only recognized the claim of Coates & Company, but accepted the power of attorney with the intention of paying them $6,000 of the balance due to Ramsay & Son. In a letter addressed to Henry Williams Elliott under date of May 28th, 1888, (ten days before the forfeiture,) Commander Evans says: 'As it is possible that some misapprehension exists as to the amount due to Messrs. Ramsay & Son, it is thought proper to call your attention to the fact that there are now due under the contract two payments,—the fourth, amounting to $12,042, and the fifth, amounting to $18,732. The entire fourth payment is pledged under power of attorney given by Mr. Ramsay. Under the last payment there were $6,000 pledged, under a power of attorney granted February 18, 1888, leaving but $12,732 to meet any further claims.' "

After quoting the above from Commander Evans, the solicitor continues:

"I am of the opinion that the sum of $6,000 should be paid to Coates & Company out of any moneys withheld by the department in the settlement with the contractors."

I think that decree ought to be entered here in favor of the plaintiff in error, and that the decree of the court below should be reversed.