## CONDE v. YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 143. Argued December 6, 1897. — Decided January 3, 1898.

In order to give this court jurisdiction to review the judgment of a state court against a title or right set up or claimed under a statute of, or an authority exercised under, the United States, that title or right must be

a title or right of the plaintiff in error and not of a third person only; and the statute or authority must be directly in issue. In this case the controversy was merely as to which of the claimants had the superior equity in the fund; the statute was only collaterally involved; and plaintiffs in error asserted no right to the money based upon it.

In September, 1889, Witherby and Gaffney entered into a contract with the Government of the United States to construct certain buildings at Sackett's Harbor, New York. Thereafter they purchased from York and Starkweather lumber and materials, which were used in the construction of the buildings, and on March 27, 1890, were indebted on account of these materials in the sum of more than $3000. Being so indebted, Witherby and Gaffney on that date executed and delivered to York and Starkweather an instrument in writing, as follows:

" Whereas we have a contract with the United States Government for the construction of buildings and officers' quarters at Madison Barracks, Sackett's Harbor, Jefferson County, N. Y.;

" And whereas we are indebted to York and Starkweather, of Watertown, N. Y., in the sum of three thousand dollars and more on account of materials furnished us by them that were used in said buildings and quarters;

" And whereas there will be due and payable to us on account of our work, etc., from the Government considerable sums of money before and on the completion of our said work;

" Now, therefore, of the moneys due and to become due us from the said Government, we do hereby for value received assign and transfer to said York and Starkweather the sum of three thousand dollars, and do hereby authorize, empower, request and direct Lieutenant J. E. Macklin, R. Q. M. Eleventh Infantry, U. S. A., through whom payments are made for such construction, to pay to said York and Starkweather on our account for such construction the full sum of three thousand dollars, as follows: First, $500 from the next estimate and payment due or to become due us, and the sum of $2500 on the completion of said work by us, and when the

balance of our contract with the Government becomes due and payable to us."

On the seventh of April, Witherby and Gaffney paid York and Starkweather $500, but no further payment was made by them. On May 15, 1890, Lieutenant Macklin, the disbursing agent of the United States Government at Sackett's Harbor gave a draft on the Treasury to the amount of $4400 to Witherby and Gaffney, which was turned over by them on that day to Conde and Streeter. Before Conde and Streeter received this draft, they had been fully notified of the paper delivered to York and Starkweather, and while the draft was in their hands, York and Starkweather demanded $2500 thereof from them, which they refused to pay or any part thereof. Conde and Streeter asserted a prior right to the draft and moneys in question by virtue of an alleged oral agreement with Witherby and Gaffney to secure the payment of certain notes upon which they were liable as indorsers and for individual claims they held against them. Conde was one of the sureties on Witherby and Gaffney's bond to the Government, and it seems to be conceded that Witherby and Gaffney obtained the money on Conde and Streeter's accommodation indorsements for the purpose of enabling them to carry on the work under the contract. Conde and Streeter applied the money to pay notes to the amount of $3200 which they had endorsed, and individual claims to the amount of $600, and about $600 was returned to Witherby and Gaffney.

April 16, 1890, Witherby and Gaffney executed to Conde and Streeter an agreement by which they promised to pay off and discharge from the money to be received by them from the Government certain notes endorsed by Conde and Streeter and certain individual indebtedness held by them against Witherby and Gaffney. On April 18, Witherby and Gaffney made a written assignment to Conde and Streeter of sufficient of the money in question to pay the notes and claims mentioned, in these words:

"That there may be no misunderstanding about the intention of the foregoing agreement, we hereby assign for value

received to John C. Streeter and Wm. W. Conde sufficient of the moneys coming to us from Lieut. Macklin, R. Q. M., to pay the claims as specified in the aforegoing agreement."

York and Starkweather brought suit against Conde and Streeter in the Supreme Court of New York for the county of Jefferson. Two defences were set up by Conde and Streeter, the second of which was "that the money, claim and property claimed by the plaintiffs in this action to have been assigned to them by Witherby and Gaffney at the time of the pretended assignment thereof, constituted and was a claim against the United States Government, which had not been allowed, or the amount due thereon ascertained, or the warrant issued for the payment thereof, and that the pretended assignment thereof does not recite the warrant for payment issued by the United States, and is not acknowledged by the person making the same before an officer having authority to take acknowledgments of deeds, and is not certified by such officer; and that said pretended assignment is in violation of the laws of the United States and of the State of New York, and that the plaintiffs never derived any interest in the said contract with the United States by virtue of the said pretended assignment or otherwise, and are not the real parties in interest in this action and ought not therefore to maintain the same; that said Witherby and Gaffney never transferred any interest in the said contract to the said plaintiffs."

The trial resulted in a verdict in favor of York and Starkweather, upon which judgment was entered, which was affirmed by the general term, and that judgment affirmed by the Court of Appeals. *York* v. *Conde,* 147 N. Y. 486. A writ of error was then allowed from this court.

*Mr. Elon R. Brown* for plaintiffs in error.

*Mr. Henry Purcell* for defendants in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Plaintiffs in error contended in the courts below that they were entitled to the fund in question by virtue of an oral

transfer prior to the assignment to defendants in error, and of
the writings executed subsequently thereto; and that defend-
ants in error acquired no right to the fund by their assignment
because such assignment was in violation of section 3477 of
the Revised Statutes of the United States. But they did not
claim that they acquired any right or title to the fund by
reason of that section, nor was its validity questioned in any
way.

In delivering the opinion of the Court of Appeals of New
York, its able and experienced Chief Judge said:

"The claim set up by the defendants in their answer, that
prior to the assignment to the plaintiffs, Witherby and Gaffney
had verbally assigned to them the money to become due on
the contract, as security for their indorsements, was tried
before the jury and found against them and need not be
further considered. There can be no doubt that under the
general rule of law prevailing in this State the plaintiffs, under
the assignment of March 27, 1890, acquired an equitable, if
not a legal, title to the money payable on the contract of
Witherby and Gaffney with the Government to the extent of
$3000, and that the defendants, having acquired possession
of the draft for the final payment on the contract, by delivery
from Witherby and Gaffney, to secure an antecedent liability,
on being notified of the claim of the plaintiffs, held the draft
and the fund it represented, as trustee of the plaintiffs, to the
extent of their claim. *Field* v. *Mayor, &c.,* 6 N. Y. 179;
*Devlin* v. *Mayor, &c.,* 63 Id. 8.

"But the contention is that the plaintiffs took nothing under
the assignment to them, because, as is claimed, the transaction
was void under section 3477 of the Revised Statutes of the
United States, to which reference has been made. That sec-
tion is as follows: 'All transfers and assignments made of
any claim upon the United States, or of any part or share
thereof, or interest therein, whether absolute or conditional, and
whatever may be the consideration therefor, and all powers of
attorney, orders or other authorities for receiving payment of
any such claim, or of any part or share thereof, shall be abso-
lutely null and void, unless they are freely made and executed

in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due and the issuing of a warrant for the payment thereof. Such transfers, assignments and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment or warrant of attorney to the person acknowledging the same.'

" This section has been considered in several cases by the Supreme Court of the United States. If that court has construed the section so as to determine the point involved in this case we should deem it our duty to follow its decision. The judgment we shall render will not, we suppose, be subject to review by the Supreme Court. We do not question the validity of the section in question, nor will our decision affect any right of the defendants based thereon. Their right, if any, rests upon the transfer of the draft after it came to the hands of Witherby and Gaffney. They seek to defeat the right of the plaintiffs under their prior assignment of a portion of the fund, and invoke section 3477 to establish that the assignment was void and conferred no right. But on a question of statutory construction of an act of Congress which has been determined by the Supreme Court of the United States, subsequently arising in this court, we should feel bound to adopt and follow the construction of that tribunal on the principle of comity, although in a case where the ultimate jurisdiction is vested in this court."

Many decisions of this court in respect of section 3477 were then considered, and the conclusion reached that the section had been so construed as to permit transfers made in the legitimate course of business, in good faith, to secure an honest debt, while they might be disregarded by the Government, to be sustained as between the parties so far as to enable the transferees, after the Government had paid over the money to its contractors, to enforce them against the latter, or those tak-

ing with notice. The court held, in effect, that such was the transaction in the case at bar, and that the transfer to York and Starkweather was simply to secure them for material actually used by the contractors in performing their contract with the Government, and amounted to nothing more than the giving of security, and not to the assignment of a claim to be enforced against the Government. The United States had, in due course, paid over the money to the contractors, and between them there was no dispute; nor had the United States any concern in the question as to which of the rival claimants was entitled to the fund, the proper distribution of which depended on the equities between them. What the New York courts determined was that the equities of York and Starkweather were superior to those of Conde and Streeter, and judgment went accordingly.

In order to give this court jurisdiction to review the judgment of a state court against a title or right set up or claimed under a statute of, or an authority exercised under, the United States, that title or right must be a title or right of the plaintiff in error and not a third person only; and the statute or authority must be directly in issue. In this case the controversy was merely as to which of the claimants had the superior equity in the fund; the statute was only collaterally involved; and plaintiffs in error asserted no right to the money based upon it.

In *Aldrich* v. *Ætna Company*, 8 Wall. 491, the question was whether the mortgage of a vessel, properly recorded under an act of Congress, gave a better lien than an attachment issued under a state statute, and the decision by the state court was that it did not. The construction of the act of Congress and its force and effect as it respected the mortgage security under which defendants claimed a right or title paramount to that of the attachment creditor was necessarily directly involved, and a proper case for review existed.

In *Railroads* v. *Richmond*, 15 Wall. 3, in a suit on a contract defendants set up that the contract had been rendered void and of no force and effect by provisions of the Constitution of the United States and of certain acts of Congress, and

the decision of the Supreme Court of Iowa was adverse to that defence. The case being brought here, a motion to dismiss the writ of error was denied.

In each of these cases the defence was rested upon a title or right of defendants specially claimed under the Constitution or laws of the United States, and being adversely disposed of, jurisdiction obtained.

Here no such contention was put forward. The materials of plaintiffs below had gone into the buildings, while, on the credit of defendants, money had been raised for their construction. Both held written agreements, from the same source, for the money when.paid over, but that of defendants below was subsequent in date to the other. Neither asserted any right under § 3477.

In *Walworth* v.. *Kneeland*, 15 How. 348, it was ruled, where a case was decided in a state court against a party who was ordered to convey certain land, and he brought the case up to this court on the ground that the contract for the conveyance of the land was contrary to the laws of the United States, that this was not enough to give jurisdiction to this court under the twenty-fifth section of the Judiciary Act. The state court decided against him on the ground that the opposite party was innocent of all design to contravene the laws of the United States. Mr. Chief Justice Taney, however, said: "But if it had been otherwise, and the state court had committed so gross an error as to say that a contract, forbidden by an act of Congress, or against its policy, was not fraudulent and void, and that it might be enforced in a court of justice, it would not follow. that this writ of error could be maintained. In order to bring himself within the twenty-fifth section of the act of 1789, he must show that he claimed some right, some interest, which the law recognizes and protects, and which was denied to him in the state court. But this act of Congress certainly gives him no right to protection from the consequences of a contract made in violation of law. Such a contract, it is true, would not be enforced against him in a court of justice; not on account of his own rights or merits, but from the want of merits and good conscience in

the party asking the aid of the court. But to support this writ of error, he must claim a right which, if well founded, he would be able to assert in a court of justice, upon its own merits, and by its own strength. No such right is claimed in the answer of the plaintiff in error. . . . Neither can the writ of error be supported on the ground that Walworth was unable to purchase, at one dollar and twenty-five cents per acre, another portion of the land mentioned in the contracts, in consequence of its subsequent cession by the United States to the Territory of Wisconsin. Whether that cession, and the enhanced price at which it was held, absolved him from the obligation of performing any part of the contract, depended altogether upon its construction. The rights of the parties did not depend on the act of Congress making the cession, but upon the contract into which they had entered. And the construction of that agreement, and the rights and obligations of the parties under it, were questions exclusively for the state court; and over its decree in this respect this court has no control."

In *Jersey City & Bergen Railroad* v. *Morgan*, 160 U. S. 288, in an action brought in a state court against a railroad company for ejecting the plaintiff from a car, the defence was that a silver coin offered by him in payment of his fare was so abraded as to be no longer legal tender, and that defence was overruled. And a writ of error having been sued out by the railroad company from this court to review the judgment thereupon rendered against it, we held that the writ could not be maintained. It was there said: "The claim which defendant now states it relies on is that the coin in question was not legal tender under the laws of the United States. This, however, is only a denial of the claim by plaintiff that the coin was such, and as, upon the facts determined by the verdict, the state courts so adjudged, the decision was in favor of and not against the right thus claimed under the laws of the United States, if such a right could be treated as involved on this record, and this court has no jurisdiction to review it. *Missouri* v. *Andriano*, 138 U. S. 496, and cases cited. And, although denying plaintiff's claim, defendant did

not pretend to set up any right it had under any statute of the United States in reference to the effect of reduction in weight of silver coin by natural abrasion."

*Writ of error dismissed.*