**UNITED STATES v. SHANNON et al.**
(two cases).

Nos. 6128, 6129.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 5, 1950.

Decided Jan. 3, 1951.

Soper, C. J., dissenting.

Harold S. Harrison, Atty., Department of Justice, Washington, D. C. (A. Devitt Vanech, Asst. Atty. Gen., Ben Scott Whaley, U. S. Atty., Russell D. Miller, Asst. U. S. Atty., Charleston, S. C., and Roger P. Marquis, Atty., Department of Justice, Washington, D. C., on brief) for appellant.

John Grimball and C. T. Graydon, Columbia, S. C., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

These are appeals by the United States in two cases relating to damage to real estate, one of which was instituted under the Tucker Act [28 U.S.C.A. § 1346, 2401, 2402] and the other under the Federal Tort Claims Act [28 U.S.C.A. §§ 1346,

2671 et seq.]. In 1943, the United States leased from Mrs. Kathleen P. Boshamer and others a tract of land, excepting therefrom two tenant houses and an acre of land surrounding each house. The suit under the Tucker Act was instituted to recover damages under the lease contract to the land covered by the lease. The suit under the Federal Tort Claims Act was to recover damages to the two houses not covered by it. The trial judge found the amount of the damage to the land covered by the lease to be $2,050 and to the houses not covered to be $975, and entered judgments for these amounts in favor of plaintiffs. The United States does not contest the correctness of the finding as to damages, but denies the right of plaintiffs to recover because of the provisions of the anti-assignment statute, 31 U.S.C.A. § 203. The judgment in the Tucker Act case embraces a recovery of $202.74 for rents due plaintiff which is admitted to be proper.

The facts with respect to the assignment are that in 1946 Mrs. Boshamer and the other owners of the land joined in a deed in which they conveyed it to plaintiffs subject to the lease then outstanding in the United States and transferred to plaintiffs any cause of action they might have against the United States for damage done the property during the term of the lease.[1] Following this transaction, agents of the United States had the parties to enter into a tripartite written contract[2] with each other and with the United States setting forth the conveyance of the land from Mrs. Boshamer and others to plaintiffs, fixing the date to which rent should be paid to vendors and after which it should be paid to plaintiffs, stating that vendors released the United States from all claims on account of damage to the land and reserving to plaintiffs all claims on account of such damage. It is to be noted that this contract, to which the United States was a party, contained an addendum signed by plaintiffs in which their rights to damages during government occupancy were specifically reserved. In 1947, when turning back the land to the owners, and investigating the amount of claims for which it was liable, the United States obtained from the vendors, but not from plaintiffs, a release of all claims arising out of occupation of the property. Not until after this had been done did it raise any question as to the validity of the assignment.

All of the damages awarded in the judgments were incurred during the term of the lease and prior to the acquisition of the property by plaintiffs; and it is perfectly clear that in the assignment of claims to plaintiffs and in the other actions taken with regard thereto, both the plaintiffs and the vendors were acting under the mistaken assumption that such assignments were perfectly valid and would vest in plaintiffs the right to recover against the government any amount for which the government might be liable thereon. It is a fair assumption also that, when accepting the tripartite agreement and obtaining later the release from vendors, the agents of the United States knew that both plaintiffs and vendors were laboring under this mistake of law.

By amended complaints filed in the cases, the vendors were made defendants and it was alleged that they had transferred to plaintiffs, along with the conveyance of the land, their claims to recover from the United States on account of damages thereto and that they refused to help plaintiffs recover on the claims. Vendors filed answer stating that they made no claim to any damages to the lands "having assigned their claims or rights, if any, to the plaintiffs" and admitted that "the plaintiffs are

---

1. It was agreed that the cause of action be transferred by a contract to convey dated April 20, 1946. The deed of conveyance was dated June 3, 1946. .

2. This contract bears date of June 20, 1946, but was evidently executed at a later date, since a letter of Dec. 23, 1946, refers to the necessity of having such an agreement executed. It contains an addendum reserving to plaintiffs claims arising out of government occupancy and use, and counsel for plaintiffs contend that this was added because plaintiffs refused to sign the agreement without this reservation.

432

entitled to the proceeds of any claim for damages which may be established as owed by the United States". On the basis of these admissions and the other facts to which we have adverted, the District Judge held that plaintiffs were not precluded from relief by the anti-assignment statute, saying:

"It appears from a review of the cases interpreting this Act that the purpose of Congress in passing it was to prevent the United States from being put in a position of having to decide to which of two claimants it would pay money under a contested claim; and then to stand liable for a like sum to the rejected claimant should a court decree that such claimant was the party to whom the money should have been paid. Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822. The courts all decree that as between the claimants themselves such an assignment is valid. Bank of California, National Ass'n v. Commissioner of Internal Revenue, 9 Cir., 133 F.2d 428; In re Webber Motor Co., 52 F. Supp. 742, 55 Am. Bankr. Rep. N.S. 340. In this case, however, all of the possible claimants against the United States in this cause of action now stand before the judicial forum. The United States will not have to choose which claimant will be paid. This court will do so and all of the claimants will be bound by the decree and those who are unsuccessful will have had their day in court and will not be heard to return at some later date and set up an unjust claim against the United States for money to which they are not entitled. The rights of all of the possible claimants and of the United States will be finally adjudicated in this one suit and that will be an end to the matter. Kathleen P. Boshamer, Eva P. Summers, Amy P. Lybrand, Julia I. Porter, Joan Porter, and N. C. Porter, Jr., have all answered in this suit and have all admitted the sale of the property and the lease in question to the plaintiffs. They also admit the sale of any cause of action that they may have against the United States to the plaintiffs and they state that they are willing for the plaintiffs to receive any money due them from the United States in this cause of action. These parties, Kathleen P. Boshamer, et al. are not merely passive parties in interest in this suit. They have been brought into this court as active parties-plaintiff by the other plaintiffs. Any judgment against the United States that may be rendered in their favor will not be decreed in favor of Samuel Shannon, Patti Shannon and W. L. Shannon, by virtue of an assignment to the Shannons, of a claim, by Kathleen Boshamer, et al. and then by virtue of the answer of Kathleen Boshamer et al. The judgment will be declared against the United States specifically in favor of Kathleen Boshamer, et al. and the admitted sale of their claim to the Shannons any proceeds arising therefrom will be awarded the Shannons."

■■ We think that this holding of the District Judge on the facts of the case before us is essentially correct. We think it clear that the assignment involved falls within the terms of the anti-assignment statute.[3] And we are not impressed by the argument that under the tripartite contract a new and independent claim was created in favor of plaintiffs which would not be subject to the statute. That instrument merely recognized the assignment of existing claims which had not then been allowed and could have no more validity than the assignment itself. Nor are we impressed with the argument that the statute has been waived; for, while the stat-

3. The anti-assignment statute here involved is 31 U.S.C.A. § 203, the pertinent part of which provides:

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share, thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof * * *".

ute may be waived by proper agents of the government after the claim has been allowed, it may not be waived in advance of allowance. Goodman v. Niblack, 102 U.S. 556, 560, 26 L.Ed. 229.

It by no means follows, however, that plaintiffs are not entitled to relief. The effect of the statute is not to invalidate the claims but merely their assignment. The vendors could unquestionably recover upon them unless precluded by the releases that they have executed; and, since the assignment is good between the parties although not against the United States,[4] any recovery which the vendors might obtain could be impressed with a trust in favor of plaintiffs.[5] It is clear that the assignment to plaintiffs and the releases executed by the vendors were the result of mutual mistake as to the law applicable in the premises and that, laboring under such mistake, plaintiffs both accepted the assignment and executed the tripartite contract with regard thereto. It is unthinkable that a court of equity should be without power to grant relief under such circumstances. The power to relieve against mistakes of law as well as of fact in proper cases is well settled.[6] The power of a court of equity to allow suits in the name of the assignor of claims not assignable at law for the benefit of the assignee is equally well established.[7] And with all parties before the court, and with the strong equity arising out of the mistake of both plaintiffs and vendors, established beyond peradventure, there is no reason in law or in morals why the court should not relieve against the mistake and grant recovery on the claim for the benefit of the parties equitably entitled to the proceeds. Whether the mistake of law here involved would be sufficient to warrant reformation or to serve as a defense in equity, it is not necessary to decide. It is certainly sufficient, taken with the other facts and circumstances of the case, to warrant the court in allowing the plaintiffs to bring the vendors into the case and requiring that it be prosecuted in their name for the use and benefit of plaintiffs.

It should be noted, in this connection, that the relief granted on the ground of mistake is primarily between the private parties. Vendors have the right to recover at law on the claims notwithstanding the assignment, since the effect of the statute is to invalidate the assignment, not the claims; and what is being done is to require them, because of the mistake of law under which all parties were acting in making the assignment, to sue on the claim for the benefit of those who are equitably entitled under the agreement made. It is argued that the vendors have released the government from liability under the claim and therefore cannot maintain suit on it; but the answer is that this release was the result of mistake on the part of the vendors as their answer clearly shows. This does not mean that the government is held liable or estopped by reason of the mistake

4. McKenzie v. Irving Trust Co., 323 U.S. 365, 369, 65 S.Ct. 405, 89 L.Ed. 305; Martin v. National Surety Co., 300 U.S. 588, 594–598, 57 S.Ct. 531, 81 L.Ed. 822; Lay v. Lay, 248 U.S. 24, 39 S.Ct. 13, 63 L.Ed. 103; McGowan v. Parish, 237 U.S. 285, 35 S.Ct. 543, 59 L.Ed. 955; National Refining Co. v. United States, 8 Cir., 160 F.2d 951; Bank of California v. Com'r of Internal Revenue, 9 Cir., 133 F.2d 428, 432–433; California Bank v. United States F. & G. Co., 9 Cir., 129 F.2d 751, 752–753; In re Webber Motor Co., D.C., 52 F.Supp. 742.

5. Martin v. National Surety Co., 300 U.S. 588, 597, 57 S.Ct. 531, 81 L.Ed. 822.

6. See Commercial Cas. Ins. Co. v. Lawhead, 4 Cir., 62 F.2d 928; Clarksburg Trust Co. v. Commercial Cas. Ins. Co., 4 Cir., 40 F.2d 626; Philippine Sugar Estates Development Co. v. Philippine Islands, 247 U.S. 385, 38 S.Ct. 513, 62 L. Ed. 1177; Griswold v. Hazard, 141 U.S. 260, 11 S.Ct. 972, 35 L.Ed. 678; Snell v. Atlantic Fire & Marine Ins. Co., 98 U.S. 85, 25 L.Ed. 52; Pomeroy's Equity Jurisprudence 4th ed. vol. 2 p. 1711 et seq.

7. Fourth Street Nat. Bank of City of Philadelphia v. Yardley. 165 U.S. 634, 644, 17 S.Ct. 439, 41 L.Ed. 855; Hinkle v. Wanzer, 17 How. 353, 367–368, 15 L. Ed. 173; 4 Am.Jur.Assignments pp. 230, 232, 247, 269, 281, and cases there cited. And see particularly United States v. American Tobacco Co., 166 U.S. 468, 17 S.Ct. 619, 41 L.Ed. 1081.

of its agents, but merely that it may not take an unconscionable advantage of the mistakes made by private parties in their dealings with it and with each other.

It is suggested that the relief here granted is contrary to the decision in United States v. Gillis, 95 U.S. 407, 24 L.Ed. 503. That case, however, decided merely that an assignee of a claim against the United States could not recover on it by suit in his own name in the Court of Claims; and such decision is manifestly not controlling here. In so far as the reasoning of the case supports a strict construction of the statute, this has been repudiated by the Supreme Court in the comparatively recent case of Martin v. National Surety Co., 300 U.S. 588, 596-597, 57 S.Ct. 531, 534, 81 L.Ed. 822, where the Court said:

"The advocates of literalism find color of support in a line of decisions made in very different circumstances from these, but tending none the less to a strict construction of the statute. National Bank of Commerce v. Downie, 218 U.S. 345, 31 S.Ct. 89, 54 L.Ed. 1065; Nutt v. Knut, 200 U.S. 12, 26 S.Ct. 216, 50 L.Ed. 348; Spofford v. Kirk, 97 U.S. 484, 24 L.Ed. 1032; United States v. Gillis, 95 U.S. 407, 24 L.Ed. 503. We do not pause to inquire with reference to all the cases whether the necessities of the judgment were as broad as the words of the opinion. * * * Another line of cases exhibit an opposing tendency. Lay v. Lay, 248 U.S. 24, 39 S.Ct. 13, 63 L.Ed. 103; Portuguese-American Bank v. Welles, 242 U.S. 7, 11, 12, 37 S.Ct. 3, 61 L.Ed. 116; McGowan v. Parish, supra [237 U.S. 285, 35 S.Ct. 543, 59 L.Ed. 955]; Freedman's Saving & T. Co. v. Shepherd, 127 U.S. 494, 506, 8 S.Ct. 1250, 32 L.Ed. 163; Hobbs v. McLean, supra [117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940]; Bailey v. United States, 109 U.S. 432, 439, 3 S.Ct. 272, 27 L.Ed. 988; Goodman v. Niblack, 102 U.S. 556, 559, 26 L.Ed. 229; McKnight v. United States, supra [98 U.S. 179, 25 L.Ed. 115]; Erwin v. United States, 97 U.S. 392, 24 L.Ed. 1065. Cf. York v. Conde, 147 N.Y. 486, 42 N.E. 193, dismissed 168 U.S. 642, 18 S.Ct. 234, 42 L. Ed. 611. These cases teach us that the statute must be interpreted in the light of its purpose to give protection to the Government. * * * To the extent that the two lines of cases are in conflict, the second must be held to be supported by the better reason."

In the light of the purpose of the statute "to give protection to the government", we agree with the District Judge that there is no ground for applying it to deny recovery in a case such as this.

The government argues that the effect of this is to nullify the statute; but we do not think so. Relief is granted, not merely because plaintiffs are assignees, nor even because the vendors have been made parties to the suit, but because of the mistake that led to the making of the assignment, which was a part of the consideration for the purchase price paid by plaintiffs for the land conveyed to them. The relief is given to the assignees, not as a matter of law, but as a matter of equity because of the mistake involved and the hardship which would otherwise result. The government is protected in its right to assert any defenses, counterclaims or set offs that it may have against the original claimants, who have been made parties to the suit. No precedent is created which might lead to the evils that the statute was designed to prevent, for the relief is granted in the exercise of the equitable powers of the court which may not be availed of except in circumstances of hardship such as are here presented.

In short: The vendors in good faith and for value assigned their claims against the government to plaintiffs in connection with a sale of property. The assignment was void but the parties were ignorant of that fact and acted under mistake as to the effect of the assignment. The vendors are entitled to recover notwithstanding the assignment and the release that they executed under mistake, and any recovery they might obtain would be for the benefit of plaintiffs. All parties are before the court and the government can assert against them any defense or counterclaim that it has or has ever had. Under such circumstances, we think it would be a reproach to

the administration of justice to hold that the court is without power to afford relief to plaintiffs by requiring vendors to sue in their behalf to recover the damages for which the government is unquestionably liable to someone. The arm of equity is neither palsied nor shortened; and certainly some way should be found to do justice and relieve against manifest mistake in a plain case of this sort. We see no reason why the government should be allowed to shield itself against the payment of a just claim by taking advantage of the mistake of those with whom it is dealing.

Strict observance of the theory upon which this suit is allowed would require that judgment be entered against the government in favor of the vendors for the use and benefit of plaintiffs. Under the circumstances here, however, any error in entering judgment directly for plaintiffs was harmless.

Affirmed.

SOPER, Circuit Judge (dissenting).

The decision of the court invites further discussion, since it seems to nullify the Federal Anti-Assignment Statute of 1853, R.S. § 3477, 31 U.S.C.A. § 203, insofar as the instant case is concerned, and to suggest a procedural pattern for future cases that will virtually destroy the statute, and to violate the principle that no one may sue the United States without its consent.

The statute declares that all transfers and assignments of any claim against the United States shall be absolutely null and void unless they are executed in the presence of two witnesses, after the allowance of the claims, the ascertainment of the amount due, and the issuance of any warrant for the payment thereof. Its primary purpose was to prevent influential persons from buying claims against the government and urging them improperly upon the officers of the government. Another purpose was to prevent multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the government to deal only with the claimant. U. S. v. Ætna Cas. & Surety Co., 338 U.S. 366, 373, 70 S.Ct. 207. It has

been enforced, subject to certain limitations not pertinent in this case, for ninety-seven years.

The Act was passed at a time when there was no general act permitting suits against the United States; and it prohibited officers of the government, engaged in the allowance of claims without suit, from giving any consideration to assigned or transferred claims. Permissive statutes allowing suit against the United States have subsequently been enacted but none of them repeals the Assignment Act expressly or by implication. The Court of Claims was established by the Act of February 24, 1855, 10 Stat. 612, and was given jurisdiction to hear and determine all claims founded upon any law of Congress or any regulation of an executive department or any contract, express or implied, with the United States; but it was held in U. S. v. Gillis, 95 U.S. 407, 24 L.Ed. 503, that this statute did not repeal the Act of 1853 or make claims assignable which, before its enactment, were incapable of assignment. The court said that the words of the Act "embrace every claim against the United States, however arising, of whatever nature it may be, and wherever and whenever presented."

The Tucker Act of March 3, 1887, c. 359, 24 Stat. 505, gave the District and Circuit Courts of the United States concurrent jurisdiction with the Court of Claims as to claims against the United States when the amount did not exceed $10,000; and it has never been suggested that this Act in any way repealed R.S. § 3477.

The Federal Tort Claims Act of 1946, 60 Stat. 842, conferred upon the District Courts of the United States jurisdiction to hear and determine claims against the United States for damages to property caused by the torts of its employees; but it was held in U. S. v. Ætna Ins. Co., 338 U.S. at page 370, 70 S.Ct. at page 210, that neither the terms of the Act nor its legislative history precluded the continued application of R.S. § 3477.

The strictness which characterized the interpretation of the assignment statute in the earlier cases has been somewhat re-

laxed and claims have been excepted from its scope which might seem to be covered by its express terms. They include involuntary assignments compelled by law without any act of the parties, such as devolution of title, the passing of claims to heirs, devisees or assignees in bankruptcy, &c. which were not subject to the evil at which the Act was aimed.[1]

The interpretation of the statute has not been relaxed, however, as to voluntary assignments which have always been regarded as subject to the prohibitions of the Act. This has been the rule in the Court of Claims: Elizabeth Smith v. U. S., 96 Ct.Cl. 326; Bolivar Cotton Oil Co. v. U. S., 95 Ct.Cl. 182; Hitchcock v. U. S., 27 Ct. Cl. 185, affirmed 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; and in the Federal Courts of Appeal; Coates v. U. S., 4 Cir., 53 F. 989; Greenville Svgs. Bank v. Lawrence, 4 Cir., 76 F. 545; U. S. v. South Carolina State Highway Dept., 4 Cir., 171 F.2d 893, 899; 23 Tracts of Land v. U. S., 6 Cir., 177 F.2d 967.

In Martin v. Nat'l Surety Co., 300 U.S. 588, 596–597, 57 S.Ct. 531, 534, 81 L.Ed. 822, the court made it clear that the strict rule has not been abandoned where "the claims against the Government, which were the subject of the assignment had never been allowed, much less collected"; but that "After payments have been collected and are in the hands of the contractor or subsequent payees with notice, assignments may be heeded, at all events in equity, if they will not frustrate the ends to which the prohibition was directed."

The discussion of the scope and meaning of the statute by Chief Justice Vinson in U. S. v. Ætna Surety Co., 338 U.S. 366, 70 S.Ct. 207, shows the way to the solution of the problem in the pending case. The point actually decided was that nothing in R.S. § 3477 prevents an Insurance Company from bringing an action under the Federal Tort Claims Act in its own name on a claim of the insured against the United States to which the insurer has become subrogated by payment to the insured. The government at first took the position that assignments by operation of law are exempt from the bar of the assignment statute only when procedural difficulties as to the government are involved. This contention was rejected on the authority of prior decisions and also on the ground that the Tort Claims Act itself indicates that a subrogated claim may be the subject of an action against the United States. Next, the Government took the position that although the subrogee of a claim might recover if it sued in the name of the insured to its use, it could not recover in a suit in its own name. The argument in effect was that R.S. § 3477 does not prevent the assignment of substantive rights against the United States but merely controls the method of procedure by which the assignee may recover. The court also rejected this argument, saying: 338 U.S. at page 372, 70 S.Ct. at page 211, Note 8.

" * * * This position is in square conflict with Spofford v. Kirk, 97 U.S. 484, 24 L.Ed. 1032, and is not justified by anything said in Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822. Furthermore, it would require that the real party in interest provisions of the Federal Rules of Civil Procedure, rule 17(a), 28 U.S.C.A., be disregarded, despite the fact that they are made specifically applicable to suits under the Tort Claims Act, and that suits against the Government in which a subrogee owns the substantive right be conducted according to the old common-law procedures in effect prior to the promulgation of the Federal Rules. Petitioner admits as much by its reliance upon United States v. American Tobacco Co., 166 U.S. 468, 17 S.Ct. 619, 41 L.Ed. 1081. This is not to say that R.S. § 3477 was 'repealed' by the Federal Rules, but that a new interpretation of the statute which is incompatible with the

---

1. See the cases cited in Note 4, supra, in the opinion of the court. In all of them a claim against the United States had been allowed and the money had been paid by the United States either to one of the parties to the assignment or into court. In none of the cases was any claim asserted against the government.

Rules, as expressly incorporated in the Tort Claims Act, must be clearly justified."

Thus it appears from the most recent decision of the Supreme Court that the substantive provisions of the statute, which invalidate assignments of claims against the United States, are still possessed of vitality, and may not be circumvented by the procedural expedient of bringing suit against the United States in the name of the assignor. In one of the pending cases the complaint is based upon the Tucker Act for damages to the land in breach of the contract of lease; in the other upon the Tort Claims Act for damages to property outside the lease caused by the negligence of the government employees. The decisions in U. S. v. Gillis and U. S. v. Ætna Surety Co., supra, are therefore applicable. Nevertheless, the court in the pending case adopts the procedural approach, declares that the claim is good and valid in the hands of the assignee, and requires the United States to pay it. The supporting argument is that the statute does not void claims, but only the assignment of claims, against the United States, and hence under equitable principles, an assignor may sue the United States on the claim in his name for the benefit of the assignee and any recovery will be impressed with a trust in favor of the assignee.

This is the premise on which the argument is based; but it is directly opposed to the decision in U. S. v. Ætna Surety Co., supra, that the statute was not designed merely to require suit in the name of the assignor. Moreover, the pending suit was not brought by the assignor but by the assignee against the United States and the assignor. It is pointed out in the opinion of this court that since all the parties to the assignments are before the court, the Government has the right to assert any defense, counterclaim or setoff, that it may have against the original claimants. It is hardly worth while to say that these defenses would be available to the United States in any case unless the claim were negotiable. The unescapable and controlling fact is that the suits are based on assignments and if it is adjudged that they are tenable, the United States will be required to inquire into the relationship and transactions between the parties, and the very purpose of the Act will be defeated.

A great deal is said in regard to the inequity and injustice of enforcing the statute upon parties who entered into the transaction under a mistake of law, supposing that the assignments were good. Heretofore in this case no one has relied on the theory of mistake. There was no mention of mistake in the formal pleadings, or in the evidence, or in the judgment of the District Court, or in the briefs in this court, doubtless for the reason that the parties well understood that they could not rid themselves of an Act of Congress by showing that they were unaware of it. The authorities on "Mistake", cited in the opinion Note 6, relate to transactions between private parties in which the Government had no share, and hence have no bearing on the pending case. It is quite plain that little or nothing will be left of the statute if the plan devised to relieve the parties to this case from its terms is given the sanction of the courts. All that an assignee need do will be to bring suit on the assigned claim against the United States and join the assignor as party defendant or as an unwilling plaintiff under Federal Rules of Civil Procedure, Rule 19, 28 U.S.C.A., and the statute will be as lifeless as if it had been repealed by Act of Congress.

It may be helpful to state the facts in chronological order so that it may be clearly seen that the officers of the United States had no part whatsoever in the transaction by which the claims against the United States were assigned to the plaintiffs and were in no way to blame for any mistaken notion of the law, which the parties may have entertained at that time. The facts stated most favorably to the plaintiffs are as follows: On January 1, 1943 the United States leased a tract of land of approximately 232 acres from Kathleen P. Boshamer and others at the

annual rental of $250, renewable from year to year upon thirty days' notice to the lessors. Two small frame houses and an acre of land belonging to the lessors were excepted from the lease. On May 30, 1944 the parties to the lease entered into Supplemental Agreement No. 1 amending the lease so as to make it renewable from year to year without further notice. On April 10, 1946 the Shannons, plaintiffs in this case, bought the leased land subject to the lease and an additional acre from Mrs. Boshamer and other owners for $30 an acre. The Shannons had then recently made two sales of land in the neighborhood at prices in excess of $100 per acre, and they testified that land in the neighborhood was worth $100 an acre and that the Boshamer tract, which consisted of 150 acres of tillable land beside woodland, was the best farm in the county. The damages to the leased land and the small tract from the occupancy by the United States, according to the plaintiffs' witnesses, amounted to $3,125. It is obvious that the Shannons got a bargain even if the assigned claims prove to be valueless. These were included with the land as part of the consideration for the purchase price without much concern on the part of the sellers who stated in their pleadings in this case that they had no knowledge of the damages but were willing that the buyers should have them for whatever they were worth.

The first contact that the Shannons had with the government officers took place after the assignments were executed, when the officers prepared a document called Supplemental Agreement No. 2, which was dated June 20, 1946 but was probably not executed until the early part of 1947 when the Government was preparing to surrender the lease and return the property to the owners. The property was actually surrendered on or about April 21, 1947. The Supplemental Agreement No. 2 made no real change in the rights or obligations of the parties to the assignments. It provided for the substitution in the lease of the names of the purchasers in place of the names of the sellers of the land; and that the rental up to June 30, 1946 should be paid to the sellers, and thereafter to the plaintiffs; and that the sellers should release the Government from all liability for damages to the land prior to June 3, 1946. The Shannons on their part accepted all the terms of the original lease and the document was signed by the sellers, the purchasers and officers of the Government. Appended to the agreement was a separate statement, signed only by the Shannons, in which they released the Government from all liability for the restoration of the premises except that the release should not apply to any claim for damages which the Shannons might have for injury to the timber, fencing, digging of holes, &c. by the United States.

It will be noticed that the claims against the Government had been assigned long before the supplemental agreement was executed and that the government officers had no share in that transaction. The evidence indicates, however, that the Shannons were unwilling to sign Supplemental Agreement No. 2 until the appended paragraph was added, and hence it was prepared and added to the agreement by the government agents. In the opinion of the court it is assumed that when the agreement was signed, the agents of the United States knew that the parties to the assignments were laboring under a mistake of law; but if this be the fact it has no bearing on the validity of the assignments since they were executed in the previous year, entirely without government intervention or assistance.

The United States has never consented to be sued in a case like the one at bar.